**Cornelius V. WILLINGHAM et al.,
Plaintiffs,**

**v.**

**James T. LYNN, Secretary of the Department of Housing and Urban Development, Individually and in his official capacity, et al., Defendants.**

**Civ. A. No. 4–70420.**

United States District Court,
E. D. Michigan, S. D.

June 18, 1974.

Clarice Jobes, Jobes, LeBost & Far-
rior, P. C., Detroit, Mich., for plaintiffs.

Ralph B. Guy, Jr., U. S. Atty., by
Michael D. Gladstone, Asst. U. S. Atty.,
Detroit, Mich., for defendants.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

This is an action brought by three
black employees of the Department of
Housing and Urban Development. The
complaint sets forth fourteen specific
types of racially discriminating practices
allegedly instituted and maintained by
the defendants, all of which the plain-
tiffs assert as having been made unlaw-
ful by Title VII of the Civil Rights Act
of 1964, as amended, 42 U.S.C., Section
2000e–16. These practices are claimed
to constitute a part of a longstanding,
systematic plan and pattern of exclusion
of black persons as a class from employ-
ment and from positions of managerial
responsibility and the opportunity for
advancements within the departmental
structure incident thereto. Jurisdiction
is invoked pursuant to 42 U.S.C., Section
2000e–5(f)(3) and 28 U.S.C., Sections
2201 and 2202, in order to protect rights
secured by 42 U.S.C., Section 2000e et
seq. and specifically Section 2000e–16
and Section 2000e–5(g) providing for
injunctive and other relief against racial
discrimination in government employ-
ment.

The present complaint represents the
most recent attempt, preceded by numer-
ous and various administrative proceed-
ings, by these plaintiffs to redress their
charges of racial discrimination. Mrs.
Agnes Miller has had the benefit of three
such proceedings. Her first complaint
was filed pursuant to Executive Order
10925 on January 27, 1964; the second
on January 6, 1965. She was joined by
Mrs. Paralee Williams, one of the plain-
tiffs herein, and Mrs. Frances Campbell,
in filing on December 6, 1967, a third
complaint, pursuant to Executive Order
11246. The administrative case files
show that each of these complaints was
investigated, agency hearings were ac-
corded, appeals taken to the highest ad-
ministrative level, and that such appeals
were either withdrawn or decided ad-
versely to Mrs. Miller and Mrs. Williams.
The last date of significance regarding
these complaints is March 24, 1971, when
the Board of Appeals and Review of the
United States Civil Service Commission
(constituting the final administrative ap-
pellate level) issued a decision affirm-
ing the findings below that there had
been no specific discriminating action
against Miller, Williams, and Campbell.

As for Mr. Willingham, the third plain-
tiff in this matter, his administrative
complaint was filed on December 9, 1970,
pursuant to Executive Order 11478. A
hearing was held on January 9, 1973, be-
fore an Appeals Examiner of the Civil
Service Commission. On August 14,
1973, an Assistant Secretary for Equal
Opportunity for HUD found no merit to
the complaint. Mr. Willingham was noti-
fied that he might institute a civil action
in a United States district court within
30 days of receipt of notice, or file an
appeal with the Civil Service Commission
Board of Appeals and Review in 15 days.

The former option was chosen, and this complaint was filed on September 28, 1973.

Defendants have filed a Motion to Dismiss and/or for Summary Judgment. It is contended that this Court lacks subject matter jurisdiction over this action. Specifically, defendants claim this to be an unconsented suit against the sovereign and deny that the Equal Employment Opportunity Act of 1972 waives this immunity with respect to the present claims, all of which arose prior to March 24, 1972, the effective date of the EEO amendments to the Civil Rights Act of 1964, i. e., 42 U.S.C., Section 2000e–16.

With the very recent filing by the Sixth Circuit Court of Appeals of the opinion in Place v. Weinberger, 497 F.2d 412, (1974),* there can be no doubt that the defense of sovereign immunity may be raised in cases such as this where the administrative action was completed by, or even pending on, March 24, 1972. The *Place* decision states that:

"Waivers of sovereign immunity must be strictly construed. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Furthermore, a law is presumed to operate prospectively unless there is a clear expression to the contrary. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). An examination of Section 14 and Section 11 of the E.E.O. Act of 1972 indicates that Congress provided that said Act 'shall be applicable in regard to charges pending before the Commission.' Thus, Congress clearly intended certain portions of the Act to operate retroactively and so indicated. We therefore conclude that by its silence as to other sections Congress intended such sections to have prospective application only. In support of this conclusion we note that the District Court relied upon Mosley v. United States, Civil 72–380–S (January 4, 1973 S.D.Calif.) and Freeman v. Defense Construction Supply Center, C72–241 (S.D.Ohio Filed October 17, 1972), in which the Act was held not to apply retroactively. We are convinced that this conclusion is sound."

The Court concluded that the plaintiff's action, initiated by the filing of an administrative complaint prior to the adoption of Section 2000e–16, was properly dismissed by the district court. This would seem to dispose of the complaint *sub judice* also.

■ The plaintiffs here, however, raise a further argument, stating that the alleged acts of discrimination complained of herein have continued beyond the dates on which the administrative complaints were filed and the administrative action terminated; that the practices have continued up to the present time. Thus, plaintiffs feel that to require the filing of a second complaint alleging the same continuing discrimination would be a needless procedural barrier. They complain also of the present effects of past discrimination. However, acts which occurred prior to March 24, 1972, are utilized as evidence to support the conclusion that this suit should not be barred by the doctrine of sovereign immunity. Numerous cases are cited in support of plaintiffs' position, including Griggs v. Duke Power Co., 420 F.2d 1225 (CA4 1970), rev'd on other grounds, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). While this Court recognizes the basic principles which the plaintiffs assert, it is clear that they have no applicability to the instant case.

In the *Place* case, this Court rejected the same argument, holding that the plaintiff had not exhausted her administrative remedies relative to acts which occurred after the enactment of Section 2000e–16, and that, therefore, plaintiff's attempt to skirt the bar of sovereign immunity must fail. Many of the same cases relied on in *Place* are cited by

---

* Affirming the decision of this Court filed July 5, 1973, Civil Action No. 38902 (Judge Philip Pratt).

plaintiffs here. None involve governmental employers and are hence distinguishable. (497 F.2d p. 415, in the Circuit Court's affirmance of *Place*.) As stated by this Court in the *Place* case:

"The acts and consequences of sexual discrimination of which plaintiff complains in her complaint occurred prior to September 24, 1971. Plaintiff has never presented the claims allegedly occurring subsequent to the enactment of the 1972 amendments to the Food and Drug Administration as is required by 42 U.S.C.A. Section 2000e–16(c) (1970–1972 Supp.Pamphlet). This is not a case where an employee claims that an employment practice neutral on its face is utilized after the passage of the Act to continue a practice of discrimination enforced prior to the passage of the act; rather, this is a case where both the allegedly neutral employment practice and the preceding discriminatory act occurs prior to the passage of the 1972 amendments. None of the above cited cases stand for the proposition that the 1972 amendments erase the defense of sovereign immunity when the plaintiff has not exhausted her administrative remedies with respect to practices occurring after the passage of the amendments."

There is no question but that plaintiffs have not exhausted administrative remedies as to any acts which may have occurred subsequent to March 24, 1972. The continuing practices complained of are couched in the generalized terms appropriate to an anticipated class action suit. The specific acts relied upon by the three plaintiffs who have initiated the law suit, however, all occurred prior to the 1972 amendments; and while the same practices may continue, it is not claimed that the manner in which these practices effect plaintiffs is identical to the past acts of defendants.

"Such new acts may be similar in nature, but could hardly be precisely identical in all respects. A claimant cannot avoid a requirement of the Act by the self-serving determination that the new facts are similar to prior alleged discriminatory acts, and that accordingly the same result would excuse her from administrative review." Place v. Weinberger, 497 F.2d p. 415.

Accordingly, plaintiffs may not rely on the continuing effects of past practices nor the continuing effects of present practices to avoid dismissal of their action.

 Plaintiffs seek further to skirt the bar of sovereign immunity by proposing in their brief an alternative basis of jurisdiction under 42 U.S.C. Section 1981 and 28 U.S.C. Section 1343. Citing Penn v. Schlesinger, 490 F.2d 700 (CA5 1973), they claim that the violations of which they have accused defendants are *ultra vires* acts on their part; thus, sovereign immunity is inapplicable, since the suit is against an officer exercising his power in an unlawful manner.

A similar argument was raised in the *Place* case in this court and was rejected by Judge Pratt on two grounds, both of which are applicable here. First, the complaint contains no allegation that the defendants' actions are unconstitutional. The allegations are merely that the amendments to the Civil Rights Act of 1964 have been violated, for which plaintiffs are suing the heads of the employing agency as is required by 42 U.S.C. Section 2000e–16(c). The only suggestion that unconstitutional behavior is present is found in plaintiffs' brief. Secondly, the relief requested is of such a nature that it would impinge upon the United States rather than upon the defendants and thereby be an unconsented suit against the sovereign.

In Larson v. Domestic Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), the Supreme Court recognized that there may be suits for specific relief against officers of the sovereign which are not suits against the sovereign itself. Actions of an officer beyond the statutory limitations of his powers are individual rather than sovereign actions. These are ultra vires actions. Also, it may be

claimed that the actions of the officer are unconstitutional. See also, Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). As noted above, in Penn v. Schlesinger, the Fifth Circuit has found a violation of Section 1981 to be an ultra vires act. This does not mean, however, that sovereign immunity may not be asserted as a defense in such cases. The mere fact that defendants are named individually does not mean that this is an action against them rather than against the United States. The "effect of the action upon the sovereign rather than its form is controlling." Ogletree v. McNamara, 449 F.2d 93, 100 (CA6 1971). And as stated in Gnotta v. United States, 415 F.2d 1271, 1277 (CA8 1969), cert. denied 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970),

> "A suit against an officer of the United States is one against the United States itself 'if the decree would operate against' the sovereign; Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); or if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration', Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act', Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)."

As noted in Ogletree v. McNamara, supra, at p. 100, the minimum statement of the doctrine of sovereign immunity is that "litigation must not be allowed to stop government in its tracks." It is the opinion of this Court that to allow the plaintiffs to proceed on their claims would be to allow an unwarranted circumvention of the doctrine of sovereign immunity.

The present suit asks for comprehensive relief, which, if granted as prayed for, would burden not the defendants in their individual capacities, but rather the United States in its governmental exercise. In particular, the Detroit office of HUD would be greatly affected. This is a situation very much like that in the Ogletree case. There, the Sixth Circuit commented with approval on the language of the district court judge characterizing the effect that granting relief similar to that prayed for in this case would have on the government:

> " 'In substance the requested relief would require this court to supervise and control the procedures, adopted by the defendants in the exercise of their discretion as officials of the executive branch of government, for the hiring, promotion and termination of civilian employees at one of this country's largest military installations.' " Ogletree, supra, at 100.

Specifically, the injunctive relief which plaintiffs seek would unquestionably affect the government. See, the Penn, Gnotta, and Ogletree decisions. If the Court were to order promotions of plaintiffs or others, this would impinge on the United States Treasury. See Gnotta. Finally, the remaining relief requested would require the Court to establish a comprehensive program for the hiring and promotion of blacks in the large Detroit area office of the Department of Housing and Urban Development. The Court deems the character of this relief to be restrictive of the United States itself, as was the case in Ogletree.

A final word is necessary in regard to the right to sue letter which was sent to plaintiff Willingham by HUD on August 14, 1973. The fact of this letter does not confer jurisdiction on this Court. The Assistant U. S. Attorney representing the defendants has assured the Court that Willingham's option of appealing to the Civil Service Commission will be restored; thus, further remedies may be pursued.

This action, therefore, is dismissed, but without prejudice, as to plaintiff Willingham's claim against the Secretary. Judicial review of that claim may lie, upon proper exhaustion, as to whether the procedural requirements of the statutes and regulations were com-

plied with and whether the action of the department officials was arbitrary or capricious or not supported by substantial evidence. Vigil v. Post Office Dept., 406 F.2d 921 (CA10 1969). The time for judicial review of the claims of plaintiffs Miller and Williams, however, is long since passed. Dismissal of this action, as must be clear from the reasons stated hereinabove, is based upon the lack of subject matter jurisdiction in this court on any of the bases asserted therefor by the plaintiffs.