**Linda ETTINGER, on her own behalf and on behalf of all others similarly situated**

v.

**Donald E. JOHNSON, Director Veterans Administration, Washington, D. C. and S. W. Melidosian, Director Veterans Administration Center, Philadelphia, Pennsylvania.**

**Civ. A. No. 73–702.**

United States District Court, E. D. Pennsylvania.

March 25, 1976.

Craig Currie, Bolger & Picker, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

MEMORANDUM OPINION

GORBEY, District Judge.

This case comes before the court for the second time. The original complaint was filed on March 26, 1973, amended on May 30, 1973, on behalf of herself and others similarly situated, alleging sex discrimination in employment, seeking declaratory and injunctive relief and back pay.

On August 20, 1974, judgment was rendered in favor of the defendants and

against the plaintiff, the court concluding that plaintiff was not entitled to a trial *de novo*, and that there was substantial evidence in the administrative record to support the Secretary's determination that plaintiff had not exhausted her administrative remedies.

On August 28, 1974, plaintiff's present attorney, counsel of record since November 28, 1973, filed a motion to vacate judgment on the ground that he did not know that the administrative record of fifty-three pages, prepared by the Veterans Administration, had been filed in the clerk's office on October 29, 1973, as an attachment to defendants' motion to dismiss. In paragraph 3 of the motion to vacate judgment (docket entry no. 18) appears the allegation:

> "Counsel for plaintiff aver that they were never notified of the existence of such a record or of the fact that such record was filed with this Honorable Court; counsel for plaintiff remained totally unaware of the fact that the administrative record was part of the record before this Honorable Court until so apprised by this Honorable Court's memorandum supporting its order of August 20, 1974."

On September 5, 1974, the motion to vacate the judgment was denied (docket entry no. 20). A memorandum in support of the order was filed on the same date. It is stated in that memorandum:

> "The record shows that on October 29, 1973, defendants filed a motion to dismiss and in the first paragraph of the memorandum in support of the motion stated:
>
> '. . . (As) a part of the record here as set forth in the attached true copy of the *Veteran's Administration report*.' (Emphasis added.)

On July 8, 1974, defendants filed a response to plaintiff's motion to amend her complaint and designate the action as a class action. [docket entry no. 13] In the last paragraph on page 4 and continuing over on page 5, it is stated:

> '. . . In the case at bar, the only findings made by the adminis-

trative agency were that the plaintiff had failed to file her complaint within the prescribed time limit. The court is presently limited in the scope of its judicial review to consideration of this *administrative record*.' (Emphasis added.)

Since the administrative report was a part of defendants' motion to dismiss, which was docketed on October 29, 1973 (docket entry no. 4), a copy of which was served on plaintiff's counsel, and reference to such administrative report was again made on July 8, 1974, as stated in the preceding paragraph, plaintiff's contention that her counsel was never advised or aware of the Veteran's Administration report is as untenable as it is void of merit."

An appeal was duly taken by the plaintiff, and on June 18, 1975, the Circuit Court of Appeals, in *Ettinger v. Johnson*, 518 F.2d 648 (3d Cir. 1975) reversed and remanded the case for further proceedings with respect to the issue "exhaustion of remedies". This action was the result of the decision in *Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975), in which the court ruled that federal employees who file an employment discrimination suit in the district court pursuant to 42 U.S.C. § 2000e–16(c) were entitled to a trial *de novo*. With respect to this court's denial of plaintiff's motion to vacate the judgment, the Circuit Court of Appeals, in footnote 6, page 650 stated:

> "Ettinger also asserts that, even if she is not entitled to a trial *de novo*, the case should be remanded to the district court 'because the court abused its discretion in denying plaintiff's motion to vacate judgment where such judgment was summary and was based on a 53 page 'administrative record' the presence of which on the district court record was unknown to plaintiff's counsel . . ..' Because of our disposition of the appeal, we need not reach this issue."

In the course of its opinion, the Court of Appeals wrote:

"At the hearing on remand, the district court may consider in the context of a more fully developed factual record Ettinger's argument that she complied with the relevant time limitations in seeking agency resolution of her claims both because she alleged continuing discrimination and because she apprised the counselor on December 6, 1972, of a discriminatory incident which had occurred less than 30 days before." *Id.* at 652.

▋ In plaintiff's reply to defendants' memorandum of law contra plaintiff's motion for partial summary judgment, plaintiff stated at page 1, "First, careful and responsible textual analysis of the Opinion reveals that the Third Circuit Court of Appeals believed that plaintiff could satisfy the exhaustion requirement by either of two possible means".

In other words, plaintiff is saying that the Circuit Court of Appeals has in effect ruled that a simple general allegation of "continuing discrimination" is sufficient to satisfy the exhaustion requirement. Neither the defendants nor this court agree with that interpretation. No amount of verbal gymnastics can obscure the fact that the issue before the court was whether plaintiff was entitled to a trial *de novo* in the district court. Having resolved that issue in favor of the plaintiff, the Circuit Court of Appeals is merely stating that the district court on remand is to consider the merits, if any, of plaintiff's contention that she has met the exhaustion requirement in either of two ways. Counsel conveniently overlooked the exact language of the court in the first three lines of the quotation in which it is stated that: "The district court may consider in · the context of a more fully developed factual record, Ettinger's argument . ."

Having interpreted the court's words as a determination that a mere "allegation of continuing discrimination" of itself is sufficient to meet the time requirements of the administrative regulations and therefore to satisfy the exhaustion of administrative remedies, the plaintiff cites numerous cases in its memorandum of law in support of plaintiff's motion for partial summary. judgment (docket entry no. 27), all of which relate to alleged discrimination in the private sector, and none of which relate to alleged discrimination in the public sector.

Since the administrative record, as well as the Circuit Court of Appeals Opinion, clearly indicate that, in general terms, "continuing discrimination" was alleged, if such allegation is sufficient, why would it be necessary to remand the case for a hearing *de novo* on the question of exhaustion, "in the context of a more fully developed factual record"? If the allegation is sufficient as plaintiff contends, why did the Court of Appeals write:

"Should the district court determine that Ettinger's recourse to the counselor was timely, it should proceed to trial *de novo* of those substantive allegations of discrimination . . .." *Id.* page 652.

Also, if the allegation of "continuing discrimination" is sufficient as a matter of law, there would have been no occasion for the Court of Appeals to say:

"If, however, the district court finds that Ettinger did not resort to the counselor within 30 days after an alleged episode of discrimination, it should proceed to decide whether this failure to exhaust can be excused on any ground, such as Ettinger's ignorance of the applicable limitation periods." *Id.* pages 652, 653.

The "continuing discrimination" cases cited by plaintiff are clearly distinguishable because they relate to the private employment sector and therefore are not subject to the principle of sovereign immunity and the limitations thereon where the government is a party. See: *Place v. Weinberger*, 497 F.2d 412 (6th Cir. 1974); *Willingham v. Lynn*, 381 F.Supp. 1119 (E.D.Mich.1974).

▋ The 1972 Amendment to the Civil Rights Act constitutes a waiver of sovereign immunity only to the extent that

Congress specifically waived such immunity. Accordingly, it is mandatory to comply with the requirements of the statute and the agency regulations pursuant thereto. The defense of sovereign immunity is to be waived, in accordance with the Congressional mandate and the administrative regulations made pursuant to it, only after specific complaints have been filed within thirty days thereof, so that there can be the administrative investigation contemplated by the Act. "Waivers of sovereign immunity from suit are strictly construed." *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

The administrative record shows that plaintiff on November 17, 1972, consulted an Equal Employment Opportunity Counselor at the Veterans Administration Center (see 5 C.F.R. §§ 713.213 and 713.214) contending that she had encountered sex discrimination as a "continuing state of affairs" at the Center. These allegations were considered by the counselor as stating three specific complaints, all of which had occurred more than thirty days prior to the date of the complaint, and the most recent event occurred on April 30, 1972, some six and one-half months prior to the date of the complaint.

Under Title 5 C.F.R. § 713.213(a), the counselor was required to complete his review of the claim within twenty-one days of the date of the complaint, which would be by December 8, 1972.

The following appears from the affidavit of David Adelman, Equal Employment Opportunity Counselor, as an attachment to defendants' response to plaintiff's motion for partial summary judgment and defendants' cross-motion for summary judgment (docket entry no. 30):

"Following my investigation as to each of the plaintiff's three Complaints, I scheduled the final counseling session for December 8, 1972, but the plaintiff called me on December 6, 1972 and wished to report another Complaint. I met with her and explained that although I believed I had completed my investigation as to her original allegations, I would look into the matter before our last scheduled session. This latter Complaint alleged that she had just been told her work assignment was being changed, which she believed was an effort to channel her into a 'dead end' position and was discriminatory,

The final session was held privately as scheduled on December 8, 1972, at which time I disclosed my findings of the investigation to the plaintiff. I explained that I could not find justification to her allegations that she had been discriminated against by reason of sex, either on a 'continuing' basis or at a single incident. I provided the plaintiff with a Complaint form and she returned it to me completed, with an Attachment, on December 18, 1972,

Since the Attachment appeared to deviate by way of certain additions to her original allegations and Complaints on the basis of which I conducted my investigation, I saw the plaintiff again and discussed the matter of timeliness. I asked her if there were any revisions she wished to make and she stated that no later incidents of alleged discrimination occurred than those reported when she first met with me and she understood that the Attachment was a change from her original statements and allegations concerning discrimination."

At an unspecified date after December 18, 1972, but within fifteen days after the incident reported on December 6, 1972, the counselor saw the complainant again, explained his interpretation of the December 18, 1972 complaint, a changing of the complaint from the previously alleged *personal* discrimination to allegations of discrimination against *females* generally. He asked her if she "had any revisions she wished to make to the complaint since she was still under her 15 days to file". (Administrative record, page 6 of Memorandum of Equal Opportunity Counselor D. Adelman to the

Equal Employment Opportunity Officer under date of January 17, 1973.)

"Complainant understood what was discussed about changing the tone of her complaint from that discussed with the counselor on her Attachment and further stated that no later incidents of alleged discrimination occurred than those reported when she first saw the counselor. No revisions to the Complaint, nor any additions have been subsequently made."

The conclusions expressed in that memorandum are accurate as a perusal of the December 18, 1972 complaint clearly indicates. In space 5 entitled: "Date On Which Most Recent Alleged Discrimination Took Place", and with spaces to indicate month, day, year, claimant merely wrote: "Attachment". When the "Attachment" is read, we see "5. Continuing", and in 7, which calls for an explanation of how she believed she was discriminated against, she listed the incidents which had been the basis of her original complaint.

As a consequence, her December 18, 1972 complaint was rejected as untimely. (Administrative record, letter to plaintiff sent by certified mail from the Acting Assistant General Counsel under date of February 16, 1973.)

It thus appears that plaintiff in her December 18, 1972 complaint abandoned her claim of the alleged December 6th incident, choosing to rely entirely on her general allegation of "continuing discrimination" against the female sex.

 The net result of the December 18, 1972 complaint is that the December 6, 1972 alleged incident which could have been the subject of a proper complaint beginning another twenty-one day period of investigation by the Equal Employment Opportunity Counselor, had it been included with the required date of its occurrence, was not submitted for determination in accordance with the regulations of the agency. Therefore, as an incident it falls within the rule that "the doctrine of exhaustion of available administrative remedies requires a federal court plaintiff to establish that all claims which could have been entertained by the administrative agency involved were in fact presented to that agency for resolution." *Beale v. Blount*, 461 F.2d 1133, 1140 (5th Cir. 1972).

It is to be noted that the Court of Appeals in remanding the case *sub judice* to the district court indicated in footnote 9, page 652, its opinion that the Fifth Circuit rule in the *Beale v. Blount* case, *supra*, is a sound one "which promotes the purposes of the exhaustion doctrine."

Returning to the Opinion of the Third Circuit Court of Appeals in this case, we note that the court wrote:

"If, however, the district court finds that Ettinger did not resort to the counselor within 30 days after an alleged episode of discrimination, it should proceed to decide whether this failure to exhaust can be excused on any ground, such as Ettinger's ignorance of the applicable limitation periods." Pages 652 and 653.

5 C.F.R. § 713.214(a)(4) provides:

"The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) For other reasons considered sufficient by the agency."

It must be noted that any extension of time limits can be granted only by the *agency* and for reasons deemed by *it* as sufficient. Nowhere in the record does it appear that claimant made any request for an extension of any time limit. Therefore, there can be nothing in the record to show arbitrary or capricious rejection of a request for extension of time limits.

If we assume, for the moment, that claimant was ignorant of the time limits for a period of time, surely that state of mind must have later been changed in view of the fact that, according to plaintiff's own testimony in a deposition tak-

en on December 17, 1975, at pages 34, 60, she had consulted two attorneys, the Director of the Lawyer's Committee for Civil Rights and the Director of the Employment Discrimination Referral Project, prior to her *first* visit with the Equal Employment Opportunity Counselor.

The assumption would seem to be reasonable that the consultation related to her employment at the Veterans Administration, and that the technical requirements with respect to alleged discrimination must have been discussed. But aside from that, there exists the stark fact that following such consultation, there is no evidence to be found in the record that prior to filing suit on May 30, 1973, in the district court, that she requested the agency for an extension of time limits on the ground that she had not been aware of the relevant time limits.

However, apart from the foregoing, the court is convinced that claimant knew much more about the agency regulations than she now admits. Claimant is not an illiterate, untutored person of low I.Q. At the time of her employment she had an A.B. degree and was working for a Master's degree, subsequently received, with respect to which the emphasis is on marshaling facts and the achievement of sound conclusions. Those qualifications are the hallmark of an ambitious person, one whose career advancement requires the acquisition of information which will enable such person with good credentials and potential to achieve desired goals.

Government's Exhibit "A" to its supplemental memorandum in support of its motion for summary judgment (docket entry no. 42) is an affidavit filed by the Chief of the Personnel Division of the Veterans Administration Center. It shows that during the time claimant was employed at the Veterans Administration Center (May 5, 1970 to September 1, 1973) information concerning the procedures to be followed in processing Equal Employment Opportunity complaints, including the requisite time limits, were distributed to all employees, in both a VA employee letter and VA Center bulletin. Also, if we assume that plaintiff's attorney, prior to filing suit in district court, in his investigation of the alleged fact was informed of the February 16, 1973 letter to his client, which notified her of the rejection of her claim for untimely filing, made a study of the administrative regulations he would have discovered 5 C.F.R. § 713.214(a)(4). Having discovered it, if he believed she did not know of the administrative time limitations, the appropriate procedure would have been to apply to the agency for an extension of time. This procedure would obviously have been consistent with the doctrine of exhaustion of administrative remedies. The record does not indicate that administrative relief had been requested, let alone denied arbitrarily, prior to her filing suit in the district court.

A thorough reading of plaintiff's deposition taken on December 17, 1975 (docket entry no. 40) resulted in the impression that the responses were not the spontaneous outpouring of the truth, but rather that each response was the result of a calculated determination that the response should be one that would not adversely affect the underlying theories of plaintiff's case (see *e. g.,* the reporter's indication of "Long pause" at pages 37, 41, 52 and 63). This conclusion was further buttressed by the overly protective attitude of her counsel illustrated in pages 11 to 22 of plaintiff's deposition and reflected throughout the entire deposition.

With respect to whether the claimant had any discussion with agency personnel which would result in her obtaining knowledge of the agency procedural requisites, there was no satisfactory response, although there were multitudinous objections by counsel (Pages 22 to 32, Deposition). Plaintiff testified that she did seek professional advice before going to see Mr. Adelman, the counselor. The response to the question as to the identity of the person to whom she turned in her hour of need for profes-

sional advice, was not one connected with the agency, and therefore one could be expected to be knowledgeable, but her psychology professor at Temple University. Luckily, she got some good advice; he advised her to see Helen Blum, at the Equal Employment Opportunity Commission, who in turn referred her to the Director of the Lawyer's Committee for Civil Rights. She also spoke to the Director of Employment Discrimination Referral Project (Deposition, pages 33 to 34).

When questioned about her first visit to Mr. Adelman, the counselor, as to whether he asked her to name specific dates, places, people, times, etc., as alleged acts of discrimination, she responded:

"A He asked me to explain my complaint.

Q Did you provide him with names and dates and things of that nature to explain?

A I told him I thought I was being discriminated against on a general continuing basis but I did provide him with examples.

Q Did he ask you to give him all of the dates and all of the acts of discrimination that you complained about?"

(Deposition, pp. 34–36)

No satisfactory response to that question was obtained and the questions continued:

"Q Do you remember Mr. Adelman ever asking you whether the specific examples you gave him of discrimination were the only ones?

A No.

Q After you had given Mr. Adelman the specifics, the information that you gave him, did he ever ask you if there was anything else?

A Yes.

Q What did you tell him?

A (Long pause.)

Q Well, what did you tell him?

A No, at that point, after, I'm not talking about November 17th, somewhat after that.

Q Now, did you in fact, after you had finished seeing Mr. Adelman, had you in fact told him everything that related to your complaint?

A When I saw him on November 17th and November 20th, I told him the substance of my complaint to that point and I again contacted him on December 6, 1972, to add to my complaint.

Q But after you had finished seeing him through that period you had told him everything; is that correct?

MR. CURRIE: Well, now—

MR. HOLL: Everything that had to do with your complaint?

THE WITNESS: I told him the substance of my complaint.

BY MR. HOLL:

Q Okay, now, when you were telling him the substance of your complaint did you tell him about other women who had been discriminated against or did you just talk about yourself?

A Not until the written complaint.

Q So, at no time did you tell Mr. Adelman about the other women that were being discriminated against; is that right?

A He was aware of my formal complaint.

Q But you didn't tell him that orally during the period of his investigation; is that correct?

A Yes."

(Deposition, pp. 36–38)

This testimony supports the accuracy of defendants' exhibits which indicate that it was not until December 6, 1972, that plaintiff made any reference to an alleged timely act of discrimination and not until December 18, 1972, was there any complaint about other women being discriminated against.

With respect to the change made in the December 18, 1972 formal complaint, which, while it contained no specific ref-

erence to the orally alleged December 6, 1972 act of discrimination, alleged "continuing discrimination" and discrimination against women generally, the deposition is illuminating:

"BY MR. HOLL:

Q Did you acknowledge to Mr. Adelman that you realized your written complaint was different than your oral one?

A Yes.

Q Somebody advised you as to writing your formal complaint?

A Yes.

Q Who was that?

A Michael Cox.

Q And he is an attorney with the Referral Project?

A That's right."

(Deposition, p. 60)

"BY MR. HOLL:

Q All right, what were the differences between the written complaint and the oral complaint, as you see it?

A The only difference that I see is that I now, in the formal complaint I presented my complaint to refer to all women at the VA.

Q And that was on the advice of your attorney, Mr. Cox, is that correct?

A Yes."

(Deposition, p. 61)

It thus appears that the December 18, 1972 formal complaint, with no mention specifically of the alleged December 6, 1972 act of discrimination, was an *advised* choice which made it impossible for the agency to process properly the orally alleged discriminatory act of December 6, 1972 and for the plaintiff to meet the requirement of exhaustion of administrative remedies. See *Penn v. Schlesinger*, 490 F.2d 700 (5th Cir. 1973), dissenting opinion, adopted by the court en banc, 497 F.2d 970 (5th Cir. 1974).

There was ample time, had there been the disposition to do so, prior to filing the complaint on March 26, 1973, in this court, to have sought administrative relief from time limits, if plaintiff was not previously aware of them.

By plaintiff's own admission she had been told by Mr. Adelman, the counselor, on December 21, 1972, that "Mr. Melidosian might interpret my complaint as not being timely" (Deposition, p. 63). She also testified that she went to the Federal Personnel Manual, ". . . December 21st, after I talked to Mr. Adelman." (Deposition, p. 79)

The next time the "untimely filing" was brought to the attention of plaintiff was when she received on March 1, 1973 (see administrative record), the official letter dated February 16, 1973, notifying her of the rejection of her complaint for untimeliness and referring to the date and time of the alleged acts of discrimination, and also referring specifically to her formal complaint of December 18, 1972. She was thus afforded the opportunity to amend the December 18, 1972 complaint by including the date of any other and more timely incidents of discrimination if, as she insisted in her deposition at pages 71–73, in response to her attorney's question, that the counselor had omitted any reference to them, and the dates of their alleged occurrence. That she did not do so, although then represented by counsel, requires the conclusion that Mr. Adelman accurately stated the facts as contained in the final paragraph of his letter of January 17, 1973, to the Equal Employment Opportunity Officer, based upon which the official letter of rejection was written to the plaintiff, under date of February 16, 1973.

Thus, we see that from December 21, 1972, to March 26, 1973, when the original complaint was filed in this court, during which time she was represented by counsel, she had the opportunity not only to amend and make more specific her complaint, but also if her alleged lack of knowledge of the time requirement was a fact, to seek administrative relief pursuant to 5 C.F.R. § 713.-214(a)(1)(i). Accordingly, the court concludes that even prior to December 21,

1972, plaintiff had actual knowledge of the time requirements under the administrative regulations, and for that reason her attorneys did not request administrative relief but are now asserting the "continuing discrimination" theory.

However, that conclusion leaves unanswered the question why there was no attempt, prior to suit in this court, to amend the December 18, 1972 formal complaint to meet the known agency objection to lack of specificity with regard to alleged timely acts of discrimination. Nevertheless, the decision in this case must be based on the record as it is, and not as it might have been, and the present record clearly indicates that plaintiff did not exhaust her administrative remedies, a failure which cannot be attributed to the defendants.

Plaintiff's present counsel, of record since November 28, 1973, regards as inappropriate defendants' citation of *Place v. Weinberger* and *Willingham v. Lynn*, *supra*, pointing out that in each case plaintiffs "ran afoul of procedure by failing to file *any* administrative complaint after the effective date of the amendment to Title VII giving federal employees a cause of action". (Letter to the court dated March 17, 1976) He also objects to the defendants' use of "the defense of sovereign immunity" in connection with the administrative regulations involved in the case *sub judice*.

In the *Place* case, the court pointed out with respect to cases cited by the plaintiff therein that none involved governmental employees and are hence distinguishable. Also none of the above cited cases stand for the proposition that the 1972 Amendments erase the defense of sovereign immunity when the plaintiff has not exhausted her administrative remedies with respect to practices occurring after the passage of the Amendments. 497 F.2d 415.

The *Willingham* case is significant because it also deals with alleged discrimination in the public sector. As in the *Place* case, the court rejected cases as precedents which did not involve governmental employees. Also, in dismissing

the action without prejudice as to the claim against the defendant agency, the court stated:

"Judicial review of that claim may lie, upon *proper exhaustion*, as to whether the procedural requirements of the statutes and regulations were complied with and whether the action of the department officials was arbitrary or capricious or not supported by substantial evidence." (Emphasis added) 381 F.Supp. 1123, 1124.

Also, the court stated that to allow plaintiffs to proceed (without having fully complied with the 1972 Amendments and administrative regulations thereunder) "would be to allow an unwarranted circumvention of the doctrine of sovereign immunity." *Id.* at p. 1123.

The aforementioned cases are also significant, because, although no administrative complaint had been filed after the effective date of the 1972 Amendment, the respective courts did not say, nor intimate, that if such complaints had been filed after the effective date of the 1972 Amendment, that there would have been no need to exhaust the administrative remedies under the appropriate regulations. On the contrary, each court clearly indicated that the doctrine of sovereign immunity is available as a defense if there has not been exhaustion of administrative remedies.

In conclusion, the court finds that after a trial *de novo*, as ordered by the Court of Appeals, in which was considered the administrative record, affidavits and exhibits, the deposition of the plaintiff, and the several memoranda of law submitted by each counsel in support of their respective positions, that the decision of the Veterans Administration was a correct one.

## ORDER

AND NOW, this 24th day of March, 1976, upon consideration of cross-motions for summary judgment, the administrative record, affidavits and exhibits, the deposition of the plaintiff, the several memoranda of law submitted by each

counsel and for the reasons given in the accompanying memorandum opinion, it is ordered that plaintiff's motion for summary judgment be and is hereby denied; it is further ordered that the defendants' motion for summary judgment be, and is hereby granted with costs and disbursements.