**Vilma P. STOCKTON, Plaintiff,**

v.

**Patricia R. HARRIS et al., Defendants.**

**Civ. A. No. 76–0427.**

United States District Court, District of Columbia.

May 17, 1977.

J. Francis Pohlhaus, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Eric B. Carriker, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

The plaintiff, Vilma P. Stockton, brings a claim of racial discrimination against her federal employer, the Department of Housing and Urban Development (HUD). Although jurisdiction has been alleged under the 5th Amendment to the United States Constitution, Executive Order 11478, 42 U.S.C. 2000e–16, and several other statutes, Section 717 of the Civil Rights Act of 1964, as added by Section 11 of the Equal Employment Opportunity Act

of 1972, 42 U.S.C. § 2000e–16 "provides the exclusive judicial remedy for claims of discrimination in federal employment". *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1963, 48 L.Ed.2d 402 (1976).

This action is before the Court on plaintiff's motion for summary judgment, defendants' opposition thereto and cross-motion to dismiss for lack of subject matter jurisdiction and failure to exhaust administrative remedies, and plaintiff's opposition to said motion.

The plaintiff is a black woman who, prior to June 1972, was and is currently employed by HUD. In June 1972 the plaintiff asked that the agency reclassify her job from grade GS–5 to grade GS–6. When her request was denied, plaintiff transferred to another position within the agency which offered the possibility of advancement in her unit.[1] On May 17, 1974 she was told by a co-worker that her former position had been reclassified by the agency although it still retained substantially the same duties and responsibilities as when held by plaintiff. The reclassification had occurred on November 14, 1973. At that time a notice of the reclassified position vacancy was circulated to all employees of the department in accordance with HUD's Merit Staffing Policies and Procedures.[2] The vacancy was filled by a black female.[3]

On May 20, 1974, three days after she claims to have learned of the upgrade, plaintiff contacted an Equal Employment Opportunity Counselor concerning the failure to upgrade the position while she retained it. She contended that the refusal of the agency to reclassify her former position when she requested it in June, 1972 was racially discriminatory. She filed a formal complaint of racial discrimination with HUD on June 17, 1974, within 30 days after she learned of the subsequent upgrade, but nearly two years after the denial of her request for job reclassification.

---

1. Letter, Vilma B. Stockton to Thomas G. Cody, dated 6–17–74, Record on EEO appeal, at 9.

2. Defendants' Statement of Material Facts pursuant to Local Rule 1–9(h), No. 4.

3. Affidavit of Mae T. Peterson, Exhibit D attached to defendants' cross-motion to dismiss and deny plaintiff's motion for summary judgment.

Plaintiff received a notice dated September 23, 1974, from HUD's Deputy Assistant Secretary, Vincent J. Hearing, stating that her complaint had been accepted and that he had requested the Assistant Secretary for Equal Opportunity to investigate her complaint.[4] Her complaint was referred for investigation on November 21, 1974. In March, 1975, plaintiff was informed of the Departmental Regulation allowing rejection of a complaint not filed within the required time limits and was asked to explain the reasons why she had not filed a timely complaint. The agency pointed out that pursuant to HUD regulations, the time limits for filing a complaint can be extended where it is shown that the complainant was prevented by circumstances outside of his or her control from submitting the matter within the designated time periods, or for any other reason considered sufficient by the Equal Employment Opportunity Officer.[5] In response to the HUD request, plaintiff stated that she considered the matter causing her to believe she had been discriminated against as having occurred on May 17, 1974, when she learned of the reclassification. This reason was not considered sufficient by the agency EEO Officer. On June 9, 1974, plaintiff's complaint was rejected by the agency for not being timely filed. In an appeal before the Appeals Review Board of the Civil Service Commission, on February 18, 1976, the agency decision was affirmed. This suit was filed March 15, 1976, within 30 days of receipt of the Commission's decision.

Plaintiff contends that the agency's failure to reclassify her former position upon her request was racially discriminatory. In justifying her long delay in filing, she refers to the text of the Civil Service Commission regulation found at 5 C.F.R. § 713.-214(a)(1)(i) (1976) which states that an agency may accept a complaint only if:

"The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him [her] to believe he [she] had been discri-

minated against within 30 calendar days of the date of that matter, or, if a personnel action, within 30 calendar days of its effective date;".

Plaintiff contends that the "matter causing her to believe she had been discriminated against" occurred on May 17, 1974, when she learned of the position upgrade. Plaintiff also maintains that acceptance of the complaint was an acknowledgment by the agency that the complaint was timely filed and/or that the Department had granted her an extension of time to file under pertinent regulations.

The Government's position—that plaintiff failed to properly exhaust administrative remedies—is based on HUD regulation, 24 C.F.R. § 7.31(a)(1) (1976). That regulation provides in part:

". . . The Department may accept a complaint only if the complainant:

(1) Brought to the attention of the EEO Counselor the matter causing the complainant to believe he has been discriminated against within 15 calendar days of the date of that matter; or, if a personnel action, within 15 calendar days of its effective date;".

The Government contends that the refusal to reclassify the plaintiff's position was clearly a personnel action within the scope of the regulation, and that therefore plaintiff was required to report the alleged discriminatory action to her EEO Officer within 15 days. The Government also points to plaintiff's failure to allege continuing discrimination. Finally, it contends that the agency would be prejudiced by being forced to process the complaint at such a late date, and emphasizes that there had been no deceit on the part of HUD.

■ At the threshold, the Court must determine which event starts the regulatory time-table running—the alleged discriminatory act itself or plaintiff's knowledge of that act. It is clear to this Court that in order to satisfy the jurisdictional

---

4. Record on EEO appeal, at 11.

5. Record on EEO appeal, at 21. The regulations referred to are found at 24 C.F.R. § 7.31(b)(1) and (2).

prerequisites of timeliness, plaintiff must complain to the EEO Counselor within 30 days of the alleged discriminatory act, unless a satisfactory explanation for lack of timeliness is presented to the agency.

The Government argues that the refusal to upgrade the position in June, 1972, started the regulatory time-table running, but if it did not, then the subsequent reclassification in November 1973 did, because plaintiff received constructive notice of the reclassification when the notice of position vacancy was circulated throughout the agency. This Court agrees.

In *Ettinger v. Johnson,* 518 F.2d 648 (3rd Cir. 1975), a sex discrimination claim under Title VII was remanded to the District Court on the question of exhaustion of administrative remedies. Relying on 5 C.F.R. § 713.214(a)(1)(i), the Court stated:

> ". . . If, however, the district court finds that Ettinger did not resort to the counselor within 30 days after an alleged episode of discrimination, it should proceed to decide whether this failure to exhaust can be excused on any ground, such as Ettinger's ignorance of the applicable limitation periods." [6]

Upon remand, the claim was dismissed for failure to exhaust administrative remedies. *Ettinger v. Johnson,* 410 F.Supp. 519 (E.D.Pa.1976). Since Ettinger had not resorted to the EEO Counselor within 30 days after an alleged episode of discrimination, the Court could not justify excusing her from the time requirement. The Court also noted that at no time did the plaintiff make a request for an extension of time. During the time of plaintiff Ettinger's employment, information concerning the procedures to be followed in processing Equal Employment Opportunity complaints, including the requisite time limits, had been distributed to all employees at the Veterans Administration Center where the plaintiff worked, in letter and bulletin form.

In the instant case plaintiff does not contend that she was unaware of the time limits, but only that she was unaware of the upgrading of the position for at least six months afterwards. However, the record in this case is clear and undisputed that a notice of position vacancy for the reclassified GS–6 position was circulated to all employees of the department on November 14, 1973 in accordance with HUD's Merit Staffing Policies and Procedures.[7] Plaintiff is chargeable with knowledge of the reclassification of the position and the advertising of the vacancy.

Plaintiff's reliance upon *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), and *Antonopulos v. Aerojet-General Corp.,* 295 F.Supp. 1390 (E.D.Cal. 1968) is misplaced.

In *Reeb* a 90 day filing requirement was waived for a woman bringing suit under Title VII. The Court concluded that there were circumstances to excuse the plaintiff from compliance with the requirement, stating

> ". . . [I]t is clear that the Supreme Court and this Court have not treated time limitations contained in Title VII of the Civil Rights Act of 1964 as inflexible 'jurisdictional' absolutes, but have modified them in the interest of giving effect to the broad remedial purposes of the Act." [8]

The agency in *Reeb* had given the plaintiff therein misleading reasons for her dismissal. Because of this deceit, the Court applied the ". . . familiar equitable modification to statutes of limitation: the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.[9] In other words, the party responsible for the wrongful concealment was es-

---

**6.** 518 F.2d at 652.

**7.** Affidavit of Cecilia J. Bankins, dated 11/16/76, Exhibit E ·attached to defendants' cross-motion to dismiss and deny plaintiff's motion for summary judgment; Defendants' Statement of Material Facts, No. 4.

**8.** 516 F.2d at 929.

**9.** *Id.* at 930.

topped from asserting the statute of limitations as a defense.

In *Antonopulos* the Court also waived the 90 day requirement for equitable reasons. The Court there stated:

"Plaintiffs have made several explanations to justify their delay. They argue that they filed within two weeks of the time they first discovered that they were discharged for an unlawful reason. They have also raised an innuendo of deceit by the defendant and their labor union. There are issues of fact as to whether plaintiffs could reasonably have known that their discharge was unlawful within the ninety day period and whether defendant's deceit, if any, should estop it from raising this issue." [10]

Both *Reeb* and *Antonopulos* can be distinguished from the instant case. In this case there is not even an innuendo of deceit by the agency. In June, 1972, the plaintiff's request for a position reclassification was denied. Seventeen months later when the position was reclassified, the agency circulated to all employees of the department, in accordance with HUD's Merit Staffing Policies and Procedures, a notice of the reclassified position vacancy. On November 14, 1973, the plaintiff was put on constructive notice of the position reclassification. At the very latest, she should have complained within 30 days of that date. According to the affidavit of Cecilia J. Bankins, Deputy Director of Headquarters Operating Division, Office of Personnel (HUD),

"... the vacancy notices were distributed to the various administrative officers within the central office building. These administrative officers in turn posted the vacancy notices in conspicuous places within their own offices. In addition, copies of the vacancy notices were sent to the HUD library, the HUD union office, and the reception room of the Office of Personnel where they were posted in conspicuous places." [11]

The agency did not have a duty to notify the plaintiff personally of the position upgrade. Under the circumstances, the agency advertised the vacancy in a manner calculated to give constructive notice to all employees. A person with a "reasonably prudent regard for his rights" should be held to having knowledge of an advertised position vacancy. Plaintiff's lack of knowledge of the position upgrade does not pass the test of *Reeb* or *Antonopulos*.

■ Plaintiff also contends that HUD's acceptance of her complaint "constituted its decision that it was timely filed or that an extension of time had been granted and that the plaintiff was therefore entitled to pursue her remedy under the agency's procedures".[12] Plaintiff maintains that under the applicable regulations, once the complaint is accepted, it must be disposed of on the merits unless the complainant fails to prosecute it. This Court cannot accept plaintiff's contention. HUD regulation 24 C.F.R. § 7.33(a) (1976) provides:

"... A complaint may be rejected, with the concurrence of the Director or Deputy Director of EEO, because it was not filed within the required time limits or because it is not within the purview of this subpart. It may be cancelled because of failure of the complainant to prosecute the complaint or because of a separation of the complainant from the Department for reasons not related to his complaint."

Plaintiff contends that since HUD rejected the complaint instead of cancelling it, it violated its own regulations. The Court disagrees. The regulations say nothing about any kind of estoppel from rejecting the complaint once it has been accepted. It appears that plaintiff is merely playing with words. Essentially, the agency rejected a complaint that had been accepted for investigation.

■ It is clear to this Court, however, that the agency was not diligent in investigating the complaint. HUD regulation 24

---

**10.** 295 F.Supp. at 1394–5.

**11.** *See,* n.7, *supra.*

**12.** Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, at 3.

C.F.R. § 7.34(b)(3) (1976) provides: "Insofar as is practicable, the investigative process shall be completed within 30 calendar days." It took HUD at least six months to investigate and reject the complaint. Although this kind of delay is unconscionable and is not to be condoned, it has nothing to do with plaintiff's prior failure to timely exhaust administrative remedies. As concerns this exhaustion issue, plaintiff suffered no prejudice by reason of the agency's delay in rejecting her complaint.

Upon consideration of all of the foregoing this Court has concluded that plaintiff has failed to timely exhaust her administrative remedies; that plaintiff's motion for summary judgment should be denied and defendants' cross-motion to dismiss should be granted.