**Paul ROTH**

v.

**NAVAL AVIATION SUPPLY OFFICE and United States Navy.**

**Civ. A. No. 77–1409.**

United States District Court, E. D. Pennsylvania.

Jan. 24, 1978.

Ronald P. Schulman, The Legal Clinic, Upper Darby, Pa., for plaintiff.

Alexander Ewing, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This Title VII action by a federal employee is presently before me on the Government's motion for summary judgment. For the reasons hereafter stated, I conclude that summary judgment should be entered for the Government.

Paul Roth, an employee of the Naval Aviation Supply Office in Philadelphia and a Seventh Day Adventist, was passed over for a promotion in 1975 because of his stated unwillingness to work on Saturdays. On April 11, 1975, Roth filed a formal Complaint of Discrimination with the Navy. *See generally* 5 C.F.R. § 713.211–.222 (1977). On March 11, 1976, the Department of the Navy issued a final decision on Roth's complaint, in which the Secretary of the Navy found that Roth had been "denied proper consideration in the disputed promotion because of [his] religious beliefs." Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Exhibit B, at 4. The Secretary further stated:

"By separate correspondence, your employing activity is being requested to give you *priority consideration* for promotion to the next available GS–5 position for which you are qualified. If your religious beliefs are found by your employer to preclude your selection and/or promotion, he is also being requested to document the reasons supporting that decision

which demonstrate the inability to accommodate your beliefs, and to furnish this Office with those reasons." *Id.* (Emphasis supplied.)

Finally, the Secretary described Roth's right of appeal under 42 U.S.C. § 2000e–16(c) (Supp. V 1975), including the fifteen-day limitations period for filing an appeal with the Civil Service Commission's Appeals Review Board (ARB), and the thirty-day limitations period for filing a civil action in district court. *See generally* 5 C.F.R. § 713.281–82 (1977). Roth took no appeal from the Secretary's decision.

On June 18, 1976, Roth was referred for consideration for another GS–5 position. He received "priority consideration" for this position, in accordance with the Secretary's decision, but the selection panel recommended that Roth be rejected as unqualified. Roth's unwillingness to work on Saturdays was not a consideration in reaching this decision, as the job entailed only a Monday-to-Friday work week. On August 10, 1976, Roth received a letter stating that the panel's recommendation would be followed.

On November 12, 1976, Roth's attorney filed with the ARB an appeal from the Secretary's decision of March 11. Although he acknowledged that the appeal was untimely, he requested that it be considered nevertheless because the delay stemmed from misleading explanations of Navy procedures (including the meaning of "priority consideration") given to him by Navy personnel. The ARB replied, in a letter dated November 29, that it could consider Roth's untimely appeal only upon a showing that Roth "was prevented by circumstances beyond his control from filing a timely appeal," and that it would consider any information submitted by December 15 in resolving that question. Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Exhibit G, 1–2. Neither Roth nor his attorney submitted any further information to the ARB.

On March 17, 1977, the ARB notified Roth's attorney that the November 12, 1976 appeal was rejected as untimely. Because it had received no response to its letter of November 29, the ARB acted based on "the information of record." Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Exhibit H, at 2. The ARB concluded that no showing had been made that would justify a waiver of the fifteen-day limitations period for an appeal from the Secretary's decision of March 11, 1976. On April 21, 1977, Roth's attorney filed the complaint in this Title VII action. 42 U.S.C. § 2000e–16 (Supp. V 1975). He contends that this was timely since it was within thirty days of his receipt of the ARB's letter of March 17. Memorandum in Derogation of Defendants' Motion for Summary Judgment, at 2.

■ The Government takes the position that it is entitled to summary judgment, inasmuch as Roth flouted the limitations periods—fifteen days for taking an appeal to the ARB and thirty days for filing a Title VII action—governing appeals [1] from the Secretary's final decision of March 11, 1976. Roth, on the other hand, urges that his failure to observe these limitations periods stemmed from multiple misleading interpretations of Navy procedures given to his attorney by Navy personnel, and that, "[w]hether the form be estoppel or a constructive extension of the time allowed for filing appeals, the defendant should not be permitted to benefit from their [sic] own actions which delayed the filing." Memorandum in Derogation of Defendants' Motion for Summary Judgment, at 4.

Rule 56(c) provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

1. A federal employee who brings a Title VII action in district court after the employing agency has either denied the relief sought or failed to act is entitled to a trial *de novo* of his claim of discrimination. *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"The law is clear that one who moves for a summary judgment has the burden of demonstrating that there is no genuine issue of fact." *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951), *quoted with approval in Ettinger v. Johnson*, 556 F.2d 692, 696 (3d Cir. 1977). For the purposes of a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion. *Bishop v. Wood*, 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Thus, if the party opposing the motion alleges facts in his complaint that are supported by affidavits or other evidence, those facts must be taken as true in ruling on the motion. *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 629 (2d Cir. 1972). The party opposing the motion, however, may not rest solely on the allegations contained in his complaint. Federal Rule 56(e) provides in pertinent part:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

*See Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976); *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 23–24 (2d Cir. 1976); *Season-All Indus., Inc. v. Merchant Shippers*, 417 F.Supp. 998, 1002 (W.D.Pa.1976).

■ In light of the foregoing, the following facts, as stated in the affidavit of Roth's attorney, Ronald Schulman, Esquire, must be taken as true for the purposes of this motion. In March of 1976, after receiving the Secretary's final decision requesting that Roth's employing activity give Roth "priority consideration" for the next appropriate GS–5 opening, Schulman made inquiries of "[t]wo sources at the activity" regarding the meaning of "priority consideration." Schulman Affidavit ¶ 3.

> "4. Both sources indicated that if the panel were to reject Mr. Roth pursuant to the order for priority consideration it would need to supply a substantial explanation of the reasons for rejecting Mr. Roth for the job. They explained that these reasons must be very clear so that an outsider might objectively understand the reasons for any rejection.
>
> 5. Based upon this explanation of the term 'priority consideration' Mr. Roth felt that he had been given an appropriate remedy and did not appeal."

A misunderstanding occurred in August, when Roth was notified that, after being given "priority consideration" for another GS–5 position, he again had been turned down.

> "7. Mr. Roth's attorney contacted the activity to determine the appropriate appeal. The attorney was informed by Mrs. Lillian Gibson that this decision would not become final until it was approved by the Secretary of the Navy.
>
> 8. Mr. Roth awaited such approval until November of 1976, at which time, his attorney upon checking into the reasons for delay of the approval of the Secretary of the Navy, was told no such approval was necessary, and that the decision had become final when it was issued."

Schulman also learned in November of the earlier misunderstanding regarding "priority consideration."

> "9. Attorney was further informed at that time that priority consideration meant that the applicant would be the first person seen but that he would be considered no differently than any other applicant for the position. This was the first time that Mr. Roth realized exactly

what relief had been granted by the Secretary of the Navy.

. . . . .

11. Upon being unable to find a definition of ‛priority consideration,’ Mr. Roth’s attorney contacted Frank A. Robey, Jr., Chairman of the Navy Employee Appeals Review Board. Mr. Robey indicated that priority consideration was directed by Chapter 335, Subchapter 6–4c(2) of the Federal Personnel Manual which states that, ‛an employee who is not promoted or given proper consideration because of the violation is to be given priority consideration for the next appropriate vacancy before candidates under a new promotion or other placement action are considered.’ Mr. Robey indicated that if this section is not a definition, he is aware of no other definition of ‛priority consideration.’ He stated that it was his understanding that each activity sets its own standards for how to handle priority consideration.”

The dispositive issue in this case is whether Roth’s failure to bring this action within thirty days of the Secretary’s March 11, 1976 final decision “can be excused on any ground.” *Ettinger v. Johnson,* 518 F.2d 648, 652–53 (3d Cir. 1975) (referring to failure to exhaust administrative remedies), *on remand,* 410 F.Supp. 519 (E.D.Pa.1976), *rev’d and remanded,* 556 F.2d 692 (3d Cir. 1977). In particular, Roth urges that the misleading explanation of “priority consideration” given to his attorney led him to accept the Secretary’s decision and to forego further judicial or administrative review, and that his failure to bring this action within the thirty-day period should be excused for that reason. Although the Third Circuit has applied the thirty-day requirement in a flexible, policy-oriented fashion,[2] I conclude that no basis exists for excusing Roth’s untimely filing. Mr. Schulman is, after all, an attorney, and as such he is chargeable with a certain measure of sophistication and thoroughness in protecting the rights of a client. He unaccountably departed from this standard when he ac-

cepted from two unnamed “sources” at the Naval Aviation Supply Office an ambiguous explanation of “priority consideration”—a central term in the Secretary’s final decision, and one with which Mr. Schulman apparently was unfamiliar. Further efforts on Mr. Schulman’s part would have led him, in all likelihood, to the Civil Service Commission regulation that discusses “priority consideration”:

“When an agency, or the Commission, finds that an employee of the agency was discriminated against and as a result of that discrimination was denied an employment benefit, or an administrative decision adverse to him was made, the agency shall take remedial actions which shall include one or more of the following, but need not be limited to these actions:

. . . . .

(2) Consideration for promotion to a position for which he is qualified before consideration is given to other candidates when the record shows that discrimination existed at the time selection for promotion was made but it is not clear that except for the discrimination the employee would have been promoted. If the individual is not selected, the agency shall record the reasons for nonselection. This *priority consideration* shall take precedence over priorities under other regulations in this chapter.”

5 C.F.R. § 713.271(b)(2) (1977) (emphasis supplied).

Armed with this description of the relief afforded by the Secretary’s final decision, Mr. Schulman and his client would then have been in a better position to choose between accepting that relief, on the one hand, and seeking further judicial or administrative review, on the other.

Inasmuch as Mr. Schulman failed to pursue his inquiry beyond the level of telephone conversations with unnamed “sources” at Roth’s employing activity, he cannot now be heard to complain that the information be received from those

2. *See Allen v. United States,* 542 F.2d 176, 179–80 (3d Cir. 1976).

"sources" was inaccurate. To hold that his reliance on those "sources" was justified could only encourage attorneys in future matters to rely on informal interpretations gleaned from agency personnel rather than written regulations or rules of procedure. Such a result would work to the detriment of those who must depend on attorneys to protect their rights, and I therefore decline to excuse Roth's untimely filing in this case.

Because the complaint in this case was not filed within thirty days of the Secretary's final decision, subject-matter jurisdiction is lacking, and the Government is entitled to summary judgment in its favor. *See Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).