Linda ETTINGER, on her own behalf and on behalf of all others similarly situated, Appellant,

v.

Donald E. JOHNSON, Director, Veterans Administration, Washington, D. C. and S. W. Melidosian, Director, Veterans Administration Center, Philadelphia, Pa., Appellees.

No. 76–1784.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1977.

Decided May 27, 1977.

Craig Currie, Bolger & Picker, Philadelphia, Pa., for appellant.

Alfred A. Gollatz, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, VAN DUSEN and WEIS, Circuit Judges.

1. For a discussion of the procedures confronting a federal employee aggrieved by discriminatory practices prior to passage of the 1972 Act, see *Brown v. GSA*, 425 U.S. 820, 824–826, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

2. Section 713.214(a)(4) provides as follows:
   "(4) The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency."

3. This requirement was changed from fifteen to thirty days as part of an overall revision of 5 C.F.R. Part 713 promulgated on October 21, 1972. These changes were required to conform the federal administrative complaint procedures to Title VII requirements and were occasioned by passage of the Equal Employment Opportunity Act of 1972.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal is from an order of the district court granting summary judgment against the plaintiff in an action brought against the Veterans Administration (VA) under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq. *as amended* by Section 717 of the Equal Employment Opportunity Act of 1972, (the 1972 Act) 42 U.S.C. § 2000e-16.[1] The summary judgment was predicated upon findings by the trial judge that the plaintiff had failed to timely exhaust administrative remedies and that she did not meet the provisions of 5 C.F.R. § 713.214(a)(4),[2] which permits waiver of the general requirement that a complaint be made within thirty days[3] of an alleged discriminatory incident if certain conditions are met. Because the district court did not properly apply F.R.Civ.P. 56 in granting the motion for summary judgment,[4] we reverse and remand.

## I. HISTORY OF THE CASE

A. *The Background of the Case.*

This is the second time that this case has been before this Court.[5] In *Ettinger v. Johnson*, 518 F.2d 648 (3d Cir. 1975) (Ettinger I), this Court reversed the district court's determination that the plaintiff was not entitled to a trial *de novo* on the question of discrimination.[6] In its holding in *Ettinger*

4. The plaintiff urges that we apply the theory of a "continuing violation" to this case and to all similar claims of federal employees brought under 42 U.S.C. § 2000e-16. The trial judge held that the "continuing violations" doctrine was inapplicable to such suits, although it is well established in private sector suits under Title VII. Under the view that we take, it is not necessary that the question of the applicability of the "continuing violations" doctrine to 42 U.S.C. § 2000e-16 suits be decided in this case.

5. A complete statement of the background facts is set out in *Ettinger v. Johnson*, 518 F.2d 648, 649 (3 Cir. 1975), so that it is not necessary that it be repeated here.

6. The right to a trial *de novo* in these cases is now well settled. See *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), 44 U.S.L.W. 4709; *Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975).
   In enacting the 1972 Act, Congress intended that adjudication on the merits proceed as

*I,* the district court judge granted summary judgment for the defendant on the ground that the VA's dismissal of the plaintiff's complaint for untimeliness was supported "by not only substantial, but also uncontroverted facts" in the administrative record. We disagreed with the denial of a *de novo* hearing, and "[b]ecause the record [then] before us . . . [did] not contain sufficient facts relevant to deciding either aspect of this exhaustion issue, we [remanded] the case to the district court for a hearing *de novo* on the question of exhaus-

7. For instance, the plaintiff's formal complaint filed on December 18, 1972, reflects, *inter alia,* the following pertinent information:

"5. DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE: Continuing

"7. EXPLAIN HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST (TREATED DIFFERENTLY FROM OTHER EMPLOYEES OR APPLICANTS) BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, OR NATIONAL ORIGIN.

I have been denied promotional opportunities on two occasions; when male employees with similar qualifications were promoted to those positions for which I submitted an application. Also, I was assigned to a dead-end job, whereas males are not. The VA discriminates against females in the following ways:

A. hiring; more males are hired than females for non-clerical type positions;

B. initial job assignment;

C. limiting educational and training programs to males and not giving the same opportunities to females;

D. supervisory and managerial positions are restricted to males;

E. concentrating female employees in clerical, lower-paying jobs, e. g., there are few male employees in the typing pool, while concentrating male employees in higher-paying, more rewarding job categories;

F. generally, female employees are discriminated against in all terms and conditions of employment.

"I feel that female employees are discriminated against within all the divisions of the VA Center.

tion." 518 F.2d at 652. It is evident from the language at pages 652–653 of 518 F.2d that the record, as it then existed, was insufficient to ascertain whether or not the December 6, 1972, allegation was an effective claim at the time the formal complaint was filed on December 18, 1972, and whether or not the plaintiff had been apprised of the timeliness provisions of 5 C.F.R. § 713.-214(a)(1)(i) so that the waiver provisions of 5 C.F.R. § 713.214(a)(4) would be inapplicable.[7]

"9. WHAT CORRECTIVE ACTION DO YOU WANT TAKEN IN YOUR BEHALF ON YOUR COMPLAINT?

A. I believe that I should be awarded back pay, which would be the difference between what I have earned and what I would have earned, but for the discrimination.

B. I believe that I should be promoted to GS–11; and be assigned to the position of 'Adjudicator' and be given immediate special training for that position."

This complaint was prepared at a time when the plaintiff had at least some assistance from counsel experienced in such cases.

However, the EEO Counselor's formal report of January 17, 1973, apparently obtained by the plaintiff only after suit was brought in the district court, lists only three complaints in paragraph B, with the latest incident described transpiring before the plaintiff saw the EEO Counselor in November 1972. The plaintiff's allegation of December 6 is not included in the complaint section of the report, but paragraph C6, describing the informal investigation conducted, indicates the December 6th allegation was an effective claim as of December 18, 1972. *See also* paragraph D, which outlines matters discussed at the final hearing, *but see* paragraph E, conclusion. Paragraph A shows that from the very beginning of her initiation of the agency procedure, the plaintiff alleged that discriminatory acts directed against her were "a continuing state of affairs."

In short, in regard to that which was complained of and investigated, neither document is a model of clarity; both contain material that would support a conclusion either way concerning the question of her continued assertion of the December 6th allegation as an effective claim.

Paragraph D of the January 17th report indicates that it was not until after December 18th that the EEO Counselor apprised the plaintiff of the timeliness requirements under 5 C.F.R. § 713.214(a)(1)(i).

We note that the VA's letter of February 16, 1973, to the plaintiff, rejecting her claim because of its untimeliness, apparently referred only to the incidents described in the three complaint paragraphs of the Counselor's for-

expeditiously as possible with minimal interference with the agency's general responsibilities. See e. g. H.R. 92–238, 92d Cong., 2d Sess. (1972) *reproduced in* 2 U.S.Code Cong. & Admin.News, p. 2137 (1972). In order to fulfill these concomitant Congressional intentions, discovery for the *de novo* proceeding will have to be more sharply focused by the court's expert discretion than is the case in the usual civil trial.

In accordance with our remand, depositions were taken from Ettinger and the Equal Employment Opportunity Counselor (EEO Counselor), who had investigated her allegations when originally made and who subsequently forwarded a report of his findings to the VA after she had filed her formal complaint on December 18th. The augmented record also contained a 1975 affidavit of the EEO Counselor, which is essentially a shorter paraphrase of his 1973 report and contains internal contradictions concerning the vitality of the December 6th claim similar to those discussed in note 7, above.[7a] Also included was the affidavit of the Chief of Personnel Division of the Veterans Administration Center which indicated that during her tenure plaintiff would have been exposed to information concerning the procedures to be followed in processing Title VII complaints; however, this affidavit specifically indicates that the bulletins distributed to the employees made reference to timeliness requirements only in the sense that "more detailed procedures for processing discrimination complaints were contained" in a VA manual, which, in turn, "contained the time limits within which a complaint must be brought to the attention of an EEO Counselor." [8]

Ettinger in her deposition and in an affidavit explicitly denied ever receiving any information concerning the thirty-day filing requirement of 5 C.F.R. § 713.214(a)(1)(i) prior to the time of her initial complaint to the EEO Counselor on or about November 17, 1972, or at any time before December 21, 1972.

Finally, it is Ettinger's contention that she brought to the attention of the Counselor at least one other incident of discrimination which occurred within thirty days of

her first visit to him but which was not reflected in his January 17th report. She stated in her deposition that one of the ways in which she was discriminated against was that, pursuant to the Merit Promotion Plan, she had been assigned to a "highly qualified status" promotion list as of April 30, 1972, and that she had not been promoted from the list during its six-month effectiveness period. Thus, Ettinger reasons that because she was not promoted during the six-month period and was decertified or removed from "highly qualified status" as of October 30, 1972, the date of the list's termination, she was discriminated against within thirty days of her initial November 17, 1972, complaint to the EEO Counselor. However, the record indicates that the last "personnel actions" from this list occurred April 30, 1972. See paragraph 3, VA letter dated January 23, 1973.

## B. The District Court's Opinion.

Following the depositions of Ettinger and the EEO Counselor, both parties moved for summary judgment on the basis of the augmented record as discussed above. On the basis of this record, the district court judge once again granted summary judgment against the plaintiff holding, first, that she had not timely exhausted her administrative remedies and, second, that she was not entitled to a waiver of the timeliness requirements under 5 C.F.R. § 713.214(a)(4).

Ettinger's contentions, discussed above, concerning her lack of promotion from the "highly qualified status" promotion list, were not discussed in the district court's opinion. The record indicates that this contention was before the district court. See e. g., Plaintiff's Supplemental Motion for

---

mal report as outlined above; this letter also made reference to a fifteen-day limitation on filing the initial complaint with the EEO Counselor—a requirement which was superseded in October 1972.

7a. Compare e. g., paragraph 4 with paragraph 6 (reproduced on page 31a, appendix) Affidavit of David Adelman, dated October 28, 1975.

8. Neither the employee bulletins nor the manual are part of the record. In addition, there is nothing from the VA in the record to suggest

the dates of distribution of the employee bulletins, the manner of promulgating this information (i. e. whether employees were briefed about their rights and responsibilities as they were hired, or at intervals collectively, or individually or once collectively or individually, or whether the information was merely posted upon a bulletin board) and so on.

In view of the discussion in note 7 above, this affidavit is entitled to only limited weight.

Partial Summary Judgment (Doc. 41) (E.D.Pa. Civ. No. 73–702) filed March 15, 1976.

In reaching its conclusion on the exhaustion issue, the trial court found that the plaintiff had abandoned the December 6th allegation by the time she filed her formal complaint on December 18, 1972. This holding was based on a review of the formal complaint which contained no explicit description of the factual discrimination underlying the December 6th report to the EEO Counselor and the 1975 affidavit of the Counselor along with those portions of the Counselor's formal report of January 17, 1973, which suggested that the plaintiff's formal complaint had changed the focus of the allegation from acts directed against the plaintiff personally to discrimination directed against females generally. The district court's opinion does not deal with other portions of the January 17th report which suggest that as of the date on which she filed her formal complaint the December 6th allegation was still a live controversy. The record, including Ettinger's deposition, is ambiguous and is as supportive of the inference that she had not abandoned the December 6th allegation as the opposite.

Despite direct statements by the plaintiff in her deposition and affidavit that she had no notice of the thirty-day limitation on filing a complaint and despite the lack of evidence in the record that would support solely a finding that the plaintiff knew of these requirements prior to December 21, 1972, the trial judge held that the plaintiff could not be believed. His conclusion was based upon the following: (1) the plaintiff's general background and intelligence, (2) her educational level, (3) the fact that shortly before she made her original complaint to the EEO Counselor in November, 1972, she had consulted with attorneys and others associated with *pro bono* legal services in discrimination cases, (4) "the overly protective attitude of her counsel illustrated in pages 11 to 22 of the plaintiff's deposition,

and reflected throughout the entire deposition," (5) unexplained pauses and unresponsive answers in the plaintiff's deposition, and (6) the above-described affidavit of the Chief of the Personnel Division (page 5 above). In addition to the foregoing, the court, in part, also seemed to predicate its conclusion on this issue on its view that she or her attorney should have notified the VA of her lack of notice following her receipt of the VA's letter [9] rejecting her claim for lack of timeliness and before suit was brought in the district court. This letter contains no reference to the December 6th allegation.

## II. APPLICABLE LAW

The relevant legal principles under Rule 56 are well settled:

> "The law is clear that one who moves for a summary judgment has the burden of demonstrating that there is no genuine issue of fact."

*Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951).

> "Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. . . . All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment."

*Toebelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016, 1018 (3d Cir. 1942).

> "When at the hearing on a motion for summary judgment there is contradictory evidence, or the movant's evidence is impeached, an issue of credibility is present, provided the contradicting or impeaching evidence is not too incredible to be believed by reasonable minds. The evidence contradicting or impeaching that of the movant will usually be produced by the opposing party, but it may appear in the movant's own evidentiary materials."

Moore's Federal Practice ¶ 56.15[4] at 56–523 (2d ed. 1976) (footnotes omitted).

---

**9.** The VA's rejection letter to the plaintiff dated February 16, 1973 did not indicate waiver under 5 C.F.R. § 713.214(a)(4) as an available alternative at that time.

"The general and well settled rule is that the court should not resolve a genuine issue of credibility at the hearing on the motion for summary judgment, whether the case be a jury or court case; and if such an issue is present the motion should be denied and the issue resolved at trial by the appropriate trier of the facts, where, to the extent that witnesses are available, he will have the opportunity to observe their demeanor. As Judge Friendly explained in *Painton & Co. v. Bourns, Inc.* [442 F.2d 216 (2d Cir., 1971)]:

'But even if the trial should turn out to be nothing more than a swearing contest, with the parties saying the same things in the witness chair they have said in affidavits, the court would have the benefit of observing their demeanor, particularly under cross-examination, and the case would come to us with factual findings on the disputed matters which are lacking in the opinion before us . . . .. Painton must prove its case through the time-honored method of trial.'"

[*Id.* at 233.]

"Absent 'an unequivocal waiver of a trial on oral testimony—credibility ought not, when witnesses are available, be determined by mere affirmations or denials that inherently lack the important element of witness' demeanor. . . . Indeed, it has been said that a witness' demeanor is a kind of "real evidence" . . . .' [*Colby v. Klune*, 178 F.2d 872, 873, 874 (2d Cir., 1949).]

\* \* \* \* \* \*

'To proceed to summary judgment it is not sufficient then that the judge may not credit testimony proffered on a tendered issue. It must appear that there is no substantial evidence on it, that is, either that the tendered evidence is in its nature too incredible to be accepted by reasonable minds, or that conceding its truth, it is without

legal probative force.' " [*Whitaker v. Coleman*, 115 F.2d 305, 306 (5th Cir., 1940).]

*Id.* at 56–519 to 56–521 (footnotes omitted); *see also, Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 887 (3d Cir. 1977).

In view of the foregoing authorities, it is clear that the trial court erred in granting summary judgment for the defendant on this record.

### A. December 6th Claim

With regard to the possibility of the plaintiff's abandonment of the December 6th allegation, the record considered as a whole supports contrary inferences. We agree that the plaintiff's formal complaint is not a model of lucid scrivenership although it was drafted at a time when she had at least some assistance from counsel experienced in discrimination litigation. On the other hand, nothing in the government's documents, including those prepared by the EEO Counselor, an attorney, unequivocally indicates that this discrimination allegation was abandoned because she may have changed the focus of her formal claim from that of discrimination directed against her personally to an allegation of discrimination directed generally against all women working for the VA. It is possible to read the complaint as asserting both claims and the EEO Counselor's January 17th report suggests both claims were asserted. On this record, we conclude that the resolution of this issue must await trial.

### B. Waiver of Time Limits Under 5 C.F.R. § 713.214(a)(4)

The government admits in its brief that no evidence exists in the record to show that prior to December 21, 1972, the plaintiff had any knowledge of the timeliness requirements mandated by the regulations.[10] This admission and the necessity of making a credibility finding in the opinion in order to reject the plaintiff's

---

10. If the plaintiff had no knowledge of the timeliness requirements, she would be entitled to a waiver under those procedures predating passage of the 1972 Act as well as post-act procedures. Thus, we need not determine if the 1972 Act applies retroactively to this case. *See Ettinger I, supra,* at 651 note 7a.

contentions made under oath that she was not informed about the filing procedures, mandate the holding that the grant of summary judgment was improper. We discuss briefly some of the materials upon which the district court relied to support its conclusion with regard to the waiver issue:

The Counselor's deposition establishes that at the time this action began in 1972, the procedure followed was for the Counselor to conduct an initial and informal investigation on the merits in spite of any timely filing deficiencies under the appropriate regulatory sections; a determination as to timeliness, if required, (or perhaps, a waiver of the requirement "for other reasons considered sufficient by the agency") would not be made until the complaint was forwarded to the agency. Thus, in this case, the Counselor was not concerned with the question of timeliness until after Ettinger filed her formal complaint on December 18 and it appeared to the Counselor that she had changed the focus of the allegations from that of personal incidents to general incidents involving women as a class. Subsequently, *the Counselor* received the 1972 revisions to the Federal Personnel Manual and raised the timeliness issue for the first time with the plaintiff; however, the record fails to show he also advised the plaintiff that she should file a concurrent request for waiver under the provisions of 5 C.F.R. § 713.214(a)(4). In the VA's rejection letter of February 16, 1973, there is nothing to suggest that the reopening of the claim under 5 C.F.R. § 713.214(a)(4) was an alternative available to the plaintiff. Also, it would appear that a number of employees (perhaps most) would accept the fact of a counselor's initial informal investigation as a tacit understanding that no timeliness problems existed or that they had been waived especially since the procedure actually followed was not reflected in the regulations and has apparently since been changed to deal with timeliness problems at the onset of the complaint. In short, if we assume that the plaintiff became aware of the timeliness requirements after December 18, the failure to request a waiver thereafter—either at the time her formal complaint was forwarded or after it was rejected—is an omission chargeable to the procedural processes used by the agency and should not be permitted to preclude the plaintiff from establishing the merits of her allegations because she had failed to exhaust administrative remedies after December 18, 1972.

We do not concur with the trial judge in his conclusion that the two other items of evidence upon which he relied are enough to overcome her direct statements that she had no knowledge of the timely filing requirements prior to the time she was first told of them by the EEO Counselor on December 21, 1972, after she had filed her formal complaint. A reference in an employee bulletin to a personnel manual, without more, is insufficient to bring home to the employee the required notification of complaint procedures employed prior to the passage of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16. *Cf., Brown v. GSA, supra.* See also note 9, *supra.* Until December 1972, even the EEO Counselor did not have a manual of the procedures employed subsequent to passage of the act.

It is not clear that an unknowledgeable plaintiff is disentitled to the waiver privilege merely because he or she consults with counsel shortly before making a complaint to the EEO Counselor or has the advice of counsel at any time during the complaint procedure. Such an approach is plainly inconsistent with the regulation, see 5 C.F.R. § 713.214(b).[11]

On the present record, the plaintiff has created a factual issue as to the waiver of the timely filing requirements and, after

---

11. This section provides in pertinent part:

"(b) *Presentation of complaint.* At any stage in the presentation of a complaint, including the counseling stage under § 713.213, the complainant shall have the right to be accompanied, represented, and advised by a representative of his own choosing."
5 C.F.R. § 713.214(b).

discovery,[12] the case should proceed forthwith on the merits unless the government can show by additional evidence that the plaintiff knew of the appropriate regulations.

### C. Claims Based on Promotion List Expiring October 30

As we have indicated above, the trial court failed to make any finding in regard to the plaintiff's contention that because of discrimination she was not promoted from a "highly qualified status" promotion list as of October 30, 1972. The plaintiff was placed on this list April 30, 1972, and the list terminated October 30, 1972. It would appear that the effective date of any incident concerning this list and the VA's failure to promote her from it would be that date upon which a less-qualified male was promoted over her. However, the official VA file concerning her complaints shows that no promotions from the list occurred after April 30th. The government argues that Ettinger's failure to develop "any facts of record establishing that a man had been promoted from the list within thirty days before November 17, 1972," establishes that she has not met the requirements of timely exhaustion; we agree. We have been unable to find in the record any specific discovery request on this issue after the remand in *Ettinger I.*

That opinion stated:

"Should the district court determine that Ettinger's recourse to the counselor was timely, it should proceed to trial *de novo* of those substantive allegations of discrimination set forth in the amended complaint and submitted to the VA for adjustment."

*Id.* at 652.
Thus, the plaintiff had sufficient opportunity to show that promotions occurred after April 30th but failed to do so. For the reasons stated, it was harmless error, if error at all, for the district court not to discuss this issue in its opinion. In addition, it would appear that the above considera-

tions demonstrate that this claim is substantially without merit.

For the reasons stated, an order will be entered reversing the judgment of the district court and remanding the case for further proceedings consistent with this opinion.

---

12. This discovery may add to the record evidence of the merits of the plaintiff's allegations

of acts of discrimination directed specifically against her.