Goldia MYLES and Mary Grimes and Eloise B. Robinson and George H. Hibbler and Lindwood H. Ewell, Jr., Individually and on behalf of all others similarly situated,

v.

James R. SCHLESINGER, Individually and as Secretary of Defense, and his agents, assigns and successors and J. R. Jones, Major General U. S. Marine Corps, Individually and as Commanding General and Director of the Marine Corps Supply Activity.

Civ. A. No. 74–1057.

United States District Court,
E. D. Pennsylvania.

Oct. 20, 1976.

Supplemental Opinion Aug. 30, 1977.

As Amended Sept. 12, 1977.

Wilbur Greenberg, Gary Green, Sidkoff, Pincus & Greenberg, Philadelphia, Pa., for plaintiffs.

David Marston, U. S. Atty., Alfred A. Gollatz, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs, three black females and two black males, were employed by the Marine Corps Supply Activity ("MCSA") located in Philadelphia, Pennsylvania.[1] They bring this proposed class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging race and sex discrimination in employment opportunities at the MCSA. Two of the plaintiffs, Mrs. Myles and Mrs. Robinson, filed separate class action administrative complaints and three of the plaintiffs, Mrs. Grimes, Mr. Ewell and Mr. Hibbler, filed a joint class action administrative complaint. The three administrative complaints were rejected as untimely by the EEOC and plaintiffs later joined together to file this suit.

The Government filed a motion to dismiss on the ground that this court lacks subject matter jurisdiction. The Government contends that all named plaintiffs filed untimely administrative complaints, that plaintiffs Grimes, Ewell and Hibbler filed untimely civil actions, and that plaintiff Robinson failed to exhaust her administrative remedies before joining in this civil suit.

I

The Civil Service regulation controlling the filing of an agency complaint, 5 C.F.R. § 713.214, states that an agency may accept a complaint only if the "complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of

1. The MSCA moved to Georgia after this complaint was filed and the court does not know plaintiffs' current employment status.

the date of that matter * * *." *Id.* at (a)(i). This regulation provides for a mandatory extension in certain cases:

"(a)(4) The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency."

Plaintiffs claim that this regulation is not jurisdictional and that, regardless, the regulation is void since it is inconsistent with the intent of Congress in promulgating Title VII. Plaintiffs also offer three theories under which they have complied with § 713.214. First, plaintiffs state that they were not aware of the 30-day time limit and therefore fall within the (a)(4) exceptions. Second, plaintiffs claim that they did not realize they were discriminated against within 30 days of the allegedly discriminatory incidents and thus fall within the (a)(4) exceptions. Third, plaintiffs allege that their complaints were timely since the discrimination which they alleged was of a continuous nature.

Title 42 U.S.C. § 2000e-16(c) confers jurisdiction on federal district courts where an aggrieved employee appeals a decision of the Civil Service Commission within 30 days of receiving notice of final Commission action. Plaintiffs Grimes, Ewell and Hibbler apparently allege that they are excused from filing timely civil actions because they were not told of their right to appeal. *See Allen v. United States,* 542 F.2d 176 (3d Cir. 1976). These plaintiffs also argue that they filed this civil suit timely. They assert that their complaint of January 3, 1974 was improperly rejected as a reactivation of their November 2, 1973 complaint and that, therefore, no final action was taken on the 1974 complaint. They contend that this civil action is timely under that portion of 42 U.S.C. § 2000e-16(c) which provides for

federal district court jurisdiction when, after 180 days from the filing of the initial charge, the agency has not taken final action. Since the complaint was filed before 180 days had expired, plaintiffs seek to amend the complaint to comply with this provision.

II

■ Where a court might find jurisdiction by resolving certain factual disputes, it should attempt to do so before facing unresolved questions of law.[2] In conformity with *Ettinger v. Johnson,* 518 F.2d 648 (3d Cir. 1975), and at the request of plaintiffs, we ordered a trial de novo restricted to the question of jurisdiction. This Memorandum Opinion is intended to clarify the issues to be tried.

■ We find that final action was taken on the 1974 complaint of plaintiffs Grimes, Ewell and Hibbler upon their receipt of the January 16, 1974 letter rejecting their complaint, if not before. The administrative record includes a copy of a notice allegedly sent to these plaintiffs advising them of their right to appeal within 30 days. Since plaintiffs seem to deny that they received notice of their right to appeal, we believe they should have an opportunity to present evidence to that effect. If these plaintiffs can satisfy the court that they were not notified of their right to appeal, they will be permitted to present evidence that they filed their administrative complaint in a timely fashion or were excused from doing so.

■ We believe that plaintiff Robinson's failure to exhaust her administrative remedies before joining in this action does not bar her from filing this suit since she subsequently exhausted all her administrative remedies. *Cf. Liberty Alliance of the Blind v. Mathews,* Civil Action No. 76-74 (E.D.Pa. Sept. 28, 1976) (Weiner, J.). Plaintiffs Robinson and Myles, having filed timely civil actions, will have an opportunity to present

2. For example, it may be unnecessary to decide whether 5 C.F.R. § 713.214 is a valid Civil Service Commission regulation.

evidence for the purpose of proving that they filed their administrative complaints in a timely fashion or were excused from doing so.

Determining whether plaintiffs complied with 5 C.F.R. § 713.214 will be limited to three issues. First, plaintiffs will be permitted to show that they were excused from lodging an administrative complaint within 30 days because they did not know of the requirement. We will want to know when they learned of the 30-day requirement and what action plaintiffs took after becoming aware of it. The Government has submitted a number of exhibits to support its contention that notice was widely distributed at the MCSA and we will expect plaintiffs to address themselves to this Government claim. Second, plaintiffs will be permitted to show that they did not realize they had been discriminated against until some time after the allegedly discriminatory events. We will want to know when they came to believe that they had been the victims of discrimination and what action plaintiffs took upon realizing this. Third, plaintiffs will be permitted to allege specific incidents of discrimination, including the dates these incidents occurred, which they feel show that they suffered continuous discrimination. Of course, the Government will have an opportunity to rebut plaintiffs' jurisdictional claims by presenting and cross-examining witnesses and introducing evidence.

## SUPPLEMENTAL OPINION

Plaintiffs, three black females and two black males, who were employed at the Marine Corps Supply Activity ("MCSA") located in Philadelphia, Pennsylvania, bring this proposed class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging race and sex dis-

crimination in employment opportunities at MCSA. In our opinion of October 20, 1976, we held that there would have to be a trial *de novo* on the question of jurisdiction.[1] Hearings were had on February 11, 1977 and April 11–12, 1977. On the basis of those hearings and exhibits submitted by both sides, we find that we have jurisdiction as to most, but not all, of plaintiffs' claims.

## I. GOLDIA MYLES

Goldia Myles, a black woman, became employed at MCSA in 1966 as an Inventory Management Assistant (GS–7). On January 25, 1974,[2] she filed an informal administrative complaint alleging race and sex discrimination. Myles filed a formal discrimination complaint on March 12. On March 26, her complaint was rejected as untimely. Myles contends that her informal complaint was timely filed, arguing: (1) the complaint was submitted within 30 days of the alleged discrimination, 5 C.F.R. § 713.214(a)(1)(i), both because plaintiff was the victim of specific incidents of discrimination within the 30 day period and because she suffered continuous discrimination lasting up to and beyond the date of filing; and (2) she was excused from having to file within 30 days of the alleged discrimination, 5 C.F.R. § 713.214(a)(4), both because she did not realize that she had been discriminated against until some time after the discrimination of which she complains and because she did not learn of the 30 day filing requirement until after she filed her informal complaint. *See Ettinger v. Johnson*, 518 F.2d 648, 653 (3d Cir. 1975) ("*Ettinger I*").

### A. *Compliance With The 30 Day Rule.*

■ Since allegations of continuous discrimination are intertwined with complaints of specific incidents, some general com-

---

1. The facts of this case are more fully set out in that opinion which we will publish together with this one.

2. Myles claims the complaint was filed on January 23, 1974, the date which she wrote and allegedly mailed it. The government argues that the complaint was filed on January 28,

1974, the date MCSA claims to have received it. 5 C.F.R. § 713.214(a)(3) states: "A complaint shall be deemed filed on the date it is received . . . or on the date postmarked . . . ." Myles' complaint was postmarked January 25, 1974, and we thus hold that to be the date of filing.

ments about continuous discrimination are in order. We believe that "continuous discrimination" is a viable concept in public sector Title VII cases. *Cf. Ettinger v. Johnson,* 556 F.2d 692 at 693 n. 4 (3d Cir., 1977) (*"Ettinger II"*). There are matters which are logically viewed as a continuum instead of as a series of discrete decisions. But it is not always easy to determine whether a charge can be properly labeled "continuous discrimination." We know of no precise rule to aid us in making such decisions. Moreover, it has become apparent that many of the things which certain courts previously analyzed as continuous discrimination were improperly labeled. *See e. g., United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). *Cf. Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 at 899 (3d Cir. 1977).

■ In our research we discovered two recent cases which found jurisdiction on the mere allegation of continuous discrimination. *See Brown v. Schlesinger,* 434 F.Supp. 1004 (E.D.Va.1977); *Blackmon v. McLucas,* 13 EPD ¶ 11,457 (D.D.C.1976). We disagree with these cases to the extent they stand for the proposition that a court should find an administrative complaint which was rejected as untimely to have been timely filed simply because there was a conclusionary allegation of continuous discrimination. While it is not appropriate for a court to consider the merits of the actual claim when determining pretrial whether jurisdiction exists, a court must analyze the specific claims of continuous discrimination to make sure that true continuous discrimination charges have been alleged. *Cf. Ettinger I, supra* at 652.

In early 1973, Myles applied for promotions pursuant to vacancy announcements 45–72, establishing a register of qualified applicants wishing to be considered for the position of Supervisory Supply Technician (GS–2005–8), and 11–73, establishing a reg-

ister of qualified applicants wishing to be considered for the position of Inventory Management Specialist (GS–2010–9). Shortly after applying, two supervisors evaluated Myles for each of these positions. A panel rated Myles "highly qualified" for the jobs on the two registers, but the panel ranked her near the bottom of the lists of highly qualified persons due primarily to low evaluations.

Myles believes she was unfairly denied promotions. She claims discrimination in her supervisors' evaluations. She also contends that there was a bias against blacks by the panel responsible for ratings and promotions on the two registers which she challenges.

■ While the registers remained open until after Myles filed her informal complaint, no positions were filled pursuant to the vacancy announcements within 30 days, or after the filing, of her informal complaint. We do not believe that Myles has alleged a timely "incident" of discrimination. The evaluations, a use of the evaluations,[3] the ratings, a use of the ratings, a denial of a promotion, the formation of the panel or a decision of the panel could have been challenged as an "incident" of discrimination within 30 days of their happening,[4] but they were not. Thus, plaintiff did not file within 30 days of an act of alleged discrimination. The issue then is whether there is a genuine continuing discrimination allegation.

■ The problem with treating Myles' charges as continuing discrimination is that a similar argument was apparently rejected in *Ettinger II, supra.* Ettinger also had been assigned to a "highly qualified" promotion list from which there had been no promotions within 30 days of her informal complaint. The Third Circuit rejected Ettinger's claim that jurisdiction was proper even though her informal complaint was filed within 30 days of the list's termination. *Id.* 556 F.2d at 695, 699. In effect,

---

3. *See* note 7 *infra.*

4. The 30 day limitations period in the above discussion probably does not begin to run until

the complainant knew or should reasonably have known of the events, if that date differs from the date of the actual event.

the court must have found that the promotion decisions were discrete incidents and that the list was not the type of matter which should be considered one continuing action.[5] We consider this claim of continuing discrimination to be a close question, but we understand that the line must be drawn between close questions, balancing fairness to plaintiffs and effectuating limitations functions. We reject Myles' continuing discrimination allegation as indistinguishable from the claim made by Ettinger.

Myles also makes several assertions of discrimination which are essentially analogous to the following fact pattern: because she was discriminatorily denied promotion to jobs with GS–8 classifications, she was declared ineligible for a number of GS–9 registers because of a lack of experience. Myles then argues that such GS–9 positions were available within 30 days of the filing of her informal complaint.[6]

This argument is close to one recently rejected by the Supreme Court in *United Air Lines, Inc. v. Evans, supra.* In that case, seven members of the Court held that a racially neutral seniority system which gave present effect to a past act of discrimination could not be challenged because the past act of discrimination had not been made the basis for a timely charge, and therefore had no present legal significance. The Court acknowledged that the seniority system had a present impact, but stated that "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *Id.* 97 S.Ct. at 1889. In Myles' case, lack of job experience as a GS–8 is a racially neutral qualification. Plaintiff waived her right to object to the discrimination which kept her from obtaining the GS–8 experience. There is current impact, but no present violation.[7]

The Court in *Evans* also expressed its concern that any other result would prevent a claim from ever being barred by limitations. *Id.* 97 S.Ct. at 1890. Similarly, were we to accept plaintiff's argument in this case, almost any time-barred discrimination in promotion could be raised by alleging that "but for" that discrimination one would now be able to apply for positions for which one does not now have the experience qualification. We hold that Myles has not alleged a valid charge of continuing discrimination under *Evans, supra.*

Myles' claim that there was an overall conspiracy at MCSA to relegate blacks and women to low-level, dead-end jobs is the easiest charge of continuing discrimination with which to deal. To allow this charge to make timely all old incidents of discrimination is to defeat totally the concept of limitations. Where, as here, there is nothing unusual about the individual incidents of discrimination, we must reject the claim that there was one continuing discrimination scheme.

The only remaining allegation of timely discrimination is Myles' charge that she and other blacks were intimidated by white Marines in positions of authority with threats that it would be difficult for blacks when MCSA moved to Georgia. Myles asserts that the threats were made in an attempt to dissuade blacks from relocating

---

5. The Third Circuit never discussed the claim in terms of continuing discrimination. However, Ettinger apparently made the argument that this was continuing discrimination. *See Ettinger v. Johnson,* 410 F.Supp. 519, 523 (E.D. Pa.1976).

6. Myles presented no evidence that such GS–9 positions were actually given to employees within 30 days of her filing her informal complaint.

7. We would distinguish the case where a plaintiff charges that s/he was denied a promotion because an old discriminatory evaluation was used in the current employment decision. The new direct use of the evaluation gives it fresh significance and should be treated as a new and independent act of discrimination. Evans' length of service was in fact shortened and the discrimination responsible for this occurrence could not be challenged since a timely charge was not filed. The criteria employed in the seniority system—length of employment—standing alone was racially neutral. But, a new use of an old biased evaluation would not be racially neutral. The evaluation would not be an objective, nondiscriminatory criterion as would be length of service or lack of job experience.

with MCSA. In the first place, it is not clear from Myles testimony whether any of these alleged threats were made within 30 days of the filing of her informal complaint. But in any event, this complaint was not raised in the administrative proceedings. Therefore, we do not have jurisdiction over the matter.

### B. Waiver of the Timely Filing Requirement.

Myles next contends that she was excused from the 30 day filing requirement because she had not realized that she had been discriminated against and because she did not know about the 30 day filing requirement. 5 C.F.R. § 713.214(a)(4) provides for a mandatory extension of the 30 day limit:

"(i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits."

█ We believe that a complainant must be excused from the requirement of having to file an administrative complaint within 30 days of the incident of discrimination where the complainant reasonably[8] did not suspect discrimination and did file within 30 days of coming to suspect discrimination. Sex and race discrimination can be very subtle. Moreover, as Myles so poignantly stated:

"That is the last thing that you want to mention. You just want to put everything else before. It is the last thing that you ever want to mention, that is race, because, after all, it is a long time I worked for the Government so you don't want to think about that, you know, the Government is going to not promote people because they are black. This is the last thing that you want to think about,

so, this is the last thing that we absolutely based it on.

All the other things we had to rule out because we had known that there was other people that had the same type of ratings, if they was white or below that they got promotions. So, we just wanted to erase it out if we possibly could." N.T. 54.

█ However, we must find against Myles on this issue of knowledge because Myles did not file her informal complaint within 30 days of reasonably coming to suspect discrimination. In September of 1973, Myles spoke to her union president about her job dissatisfactions. During that discussion, Myles specifically raised the issue of discrimination. Even if we were to accept Myles' contention that she was *not sure*[9] at that time that her problems were caused by discrimination, Myles admitted reaching the conclusion that her lack of progress was due to discrimination based on discussions with other blacks in December, 1973. The latest date Myles asserted as her day of realization is December 24, 1973 and even that date is more than 30 days before she filed her administrative complaint.

Finally, Myles argues that she was excused from complying with the 30 day filing requirement because she did not know about the 30 day rule. We credit Myles' testimony that she did not know about the 30 day filing requirement until after she filed her informal complaint. However, MCSA contends that it took adequate steps to insure that Myles and every other employee was aware of the 30 day rule. We are faced with a dual inquiry: first, at what point, if ever, does an agency's efforts at informing its employees of the 30 day filing requirement defeat an employee's claim that s/he had no subjective knowledge of the requirement; and second, if there is such a point, was MCSA's program

---

**8.** Fear, pride and embarrassment are normal psychological impediments to suspecting discrimination.

**9.** We do not think that complainants are entitled to waivers of the filing requirement merely because they are "not sure" that they have

been discriminated against. This would give Title VII plaintiffs an advantage unknown in any other limitations area. While we do not decide precisely what standard is to be used, we think something like "reasonable suspicion" is appropriate.

for notifying employees of complaint procedures the type that should be held to defeat Myles' claim of lack of knowledge.

 We believe that subjective ignorance does not automatically entitle a complainant to a time extension. On the other hand, we hold that the notification must be reasonably geared to inform the complainant of the time limits before the complainant is estopped from asserting ignorance as an excuse for late filing.

In *Ettinger II, supra,* the plaintiff similarly argued that since she had not been apprised of the timeliness provisions of 5 C.F.R. § 713.214(a)(1)(i), the waiver provisions of 5 C.F.R. § 713.214(a)(4) were applicable.[10] There are two sentences in the opinion of the court which suggest that an agency has an obligation to educate its employees in a manner reasonably geared to informing them of the time limits. In one footnote the court stated:

> "[T]here is nothing from the VA in the record to suggest the dates of distribution of the employee bulletins, the manner of promulgating this information (i. e. whether employees were briefed about their rights and responsibilities as they were hired, or at intervals collectively, or individually or once collectively or individually, or whether the information was merely posted upon a bulletin board) and so on." *Id.* 556 F.2d at 695.

Later in the opinion, the court stated:

> "A reference in an employee bulletin to a personnel manual, without more, is insufficient to bring home to the employee the required notification of complaint procedures employed prior to the passage of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16." *Id.* at 698.

 The Court in *Ettinger II* found that its plaintiff had created a factual issue as to the waiver of the timely filing requirements

and held that the case should proceed to trial unless the government showed by additional evidence that the plaintiff knew of the appropriate regulations. *Id.* at 698–99. Similarly, Myles, through her testimony that she never saw any announcements, bulletins or notice about the filing requirements and never received training in the area, has created a factual issue as to waiver of the timely filing requirements. We now look to see whether the government in this case presented sufficient evidence of its notification efforts to defeat Myles' claim of lack of knowledge.

MCSA publicized the EEO complaint procedures in the following ways: billboards located throughout MCSA contained a variety of postings including an Equal Opportunity Poster, the EEO Policy and Complaint Procedure and the Standard Operating Procedures Manual (P12000); a number of articles in MCSA's newspaper publicized the EEO program, procedures and personalities at MCSA; MCSA had an indoctrination program for new employees at the agency during the period in which these plaintiffs became employed at MCSA; and MCSA distributed a handbook to employees which stated that EEO complaints could be filed in accordance with procedures outlined in P12000 which was posted on all bulletin boards. At first glance, it appears that MCSA did a thorough job in publicizing the EEO complaint procedures. However, a careful examination of the various programs reveals that information about the 30 day requirement was not disseminated in a manner reasonably geared to notify employees of its existence.

The bulletin boards located throughout MCSA were cluttered with numerous postings, obscuring most of the materials posted. The poster which the MCSA produced as having appeared on the bulletin board had very small print and was obsolete, inaccurately stating that the time period for

---

10. The Veterans Administration in that case had distributed bulletins to employees which stated that details of the timeliness requirements could be found in a VA manual. The court held that the VA efforts were insufficient, pointing out that: "Until December, 1972, even

the EEO Counselor did not have a manual of the procedures employed subsequent to passage of the act." *Ettinger II, supra,* 556 F.2d at 698. Ettinger had filed her initial complaint on or about November 17, 1972. *Id.* at 695.

filing a complaint was 15 days. The only other material on the bulletin board which is alleged to have advised employees of the 30 day rule was the Standard Operating Procedures Manual (P12000), a five inch thick looseleaf binder with a chapter in the middle entitled "Equal Employment Opportunity." The Manual was supposed to be hung by a chain at each bulletin board. The evidence is conflicting as to whether the Manual hung at the bulletin boards situated near Myles' employment. In any event, we do not believe that one sentence in the middle of a five inch thick manual which is located on a crowded bulletin board is sufficient notice of the 30 day requirement.

The only article in MCSA's newspaper, The Digest, to mention specifically the 30 day filing requirement appeared on June 23, 1967.[11] Moreover, Myles testified that The Digest was not published in sufficient numbers to give every employee a copy, that she frequently was unable to obtain a copy and that she did not see the June 23, 1967 issue. The fact that there was one 1967 article, received by some employees, which told of the filing timetable is not sufficient notice of the 30 day rule.

There was very little evidence presented about MCSA's orientation program. A former EEO counselor testified that all new employees went to an orientation program which included a presentation by an EEO counsel about the EEO program. However, the witness was not responsible for the orientation program, and there was no evidence presented that he indoctrinated every employee or any of the plaintiffs regarding the EEO program. Myles stated she was never indoctrinated and we have no reason to believe that the orientation program was more than haphazard and random. Moreover, the 1972 Amendments to Title VII were enacted long after Myles became employed at MCSA, and therefore federal em-

ployees were not protected by Title VII at the time she would have been oriented. Brown v. GSA, 425 U.S. 820, 825–28, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Obviously this is insufficient notice.

Finally, the handbook which all employees were given contains only one page about equal employment opportunity. MCSA submitted parts of a 1968 and a 1974 handbook. An affidavit by the Director of Civilian Personnel states that the 1968 handbook was given to every employee and that the 1974 handbook was given to all new employees. The 1968 handbook which Myles should have received states that "formal complaints may be filed in accordance with procedures outlined in AO P12000 1B, Chapter 6,[12] which is permanently posted on all official Bulletin Boards throughout the Command." We do not believe that this reference in the employee manual to "P12000" is sufficient to inform employees of the 30 day filing requirement.

While we recognize that Myles presents a close case for a waiver of the timeliness requirement, we believe that application of 5 C.F.R. § 713.214(a)(4) is mandated. The 30 day statute of limitations is not reasonable if agencies and courts do not liberally construe the (a)(4) exceptions.[13] Therefore, we hold hold that there is jurisdiction as to Myles' claims.

## II. ELOISE ROBINSON

Eloise Robinson, a black woman, became employed at MCSA in 1966 as an Inventory Management Assistant (GS–7). She was promoted to Inventory Management Specialist (GS–9) in 1967. On April 22, 1974, Robinson filed an informal administrative complaint alleging race and sex discrimination. She filed a formal complaint on June 4. On July 1, her complaint was rejected as

---

11. The article did not mention redress of sex discrimination complaints.

12. The 1968 handbook referred to Chapter 6 of P12000 and the 1974 handbook referred to Chapter 8 of P12000. Therefore the 1968 hand-

book reference was probably obsolete at least by 1974.

13. We do not decide whether the 30 day regulation is inconsistent with the intent of Congress in promulgating Title VII.

untimely.[14] Robinson alleges both compliance with the 30 day rule and exemption from it for the same reasons as Myles.

*A. Compliance With the 30 Day Rule.*

In early April, 1973, Robinson applied for a promotion pursuant to vacancy announcement 11–73, establishing a register of qualified applicants wishing to be considered for the position of Inventory Management Specialist (GS–11). Later in April, two supervisors evaluated Robinson for the position. She was rated "highly qualified" for the job, but she alleges that she was not promoted primarily because of low evaluations. Robinson claims discrimination in the evaluations and in the denial of promotion.

■ Robinson's supervisorial evaluations for announcement 11–73 were completed in April, 1973. While the register was still open when Robinson filed her informal complaint, there is no evidence that any person on the register was promoted over her within 30 days of the filing of her informal complaint. Therefore, as with Myles, any discrimination involved in the specific evaluations and failure to promote for the vacancy announcement took place more than 30 days before Robinson filed her informal complaint, and the claim cannot properly be considered one of continuing discrimination because of *Ettinger II, supra.*

■ On March 22, 1974, Robinson and other black employees filed a written "Request for Amendments to Position Description," seeking to have their job descriptions updated to reflect what they considered to be increased responsibilities. About a week later, MCSA denied the employees' request. Robinson alleges that the denial was racially motivated and therefore this is an incident of discrimination which occurred within 30 days of her filing an informal complaint. However, Robinson's informal and formal complaints never mentioned her job description or the MCSA's refusal to update her description. Instead, the complaints focused on subjective supervisorial evaluations, lack of promotion and MCSA's move to Georgia. Since the job description allegation was not raised in the administrative proceedings, we do not have jurisdiction over the matter.

■ We do not believe that the mere existence in plaintiff's file of past discriminatory evaluations, which might be used in the future, constitutes either continuing discrimination or a specific act of discrimination.[15] Similarly the fact that Robinson had a discriminatory job description which might be used in the future is not actionable unless objected to within 30 days of the job description's promulgation or its use. These two grievances border on continuous discrimination, but are better considered as discrete decisions than as continuing discrimination.

*B. Waiver of the Timely Filing Requirement.*

■ As with Myles, Robinson argues that she was excused from complying with the 30 day filing requirement because she did not realize that she had been discriminated against until some time after the discrimination of which she complains and because she did not learn of the 30 day filing requirement until just before she filed her informal complaint.

Robinson claims that she did not think her poor evaluations and failure to obtain promotions were due to race until April of 1974. She states that her realization came after a discussion with plaintiff Grimes in the beginning of April. Within 10 days of that discussion, Robinson filed her complaint. We believe Robinson's testimony that she did not realize she had been discriminated against until April of 1974, and we find her lack of realization to be reasonable.

In 1968 and 1972 Robinson filed grievances concerning her lack of promotion.

---

14. The allegation of discrimination pertaining to the scheduled relocation of MCSA to Georgia was rejected as a matter unacceptable for processing.

15. A new use of the evaluation would be an incident of discrimination. *See note 7 supra.*

Race and sex discrimination were not mentioned in those grievances. We believe this supports Robinson's testimony that she did not suspect discrimination until April of 1974. As a result, we believe that Robinson must be given a mandatory extension of the 30 day time limit pursuant to 5 C.F.R. § 713.214(a)(4).

Moreover, we also find that Robinson must be given an extension of time because she did not learn of the 30 day filing requirement until her conversation with Myles in April of 1974. We credit Robinson's testimony that she had no knowledge of the 30 day rule before that conversation. As with Myles, we find that MCSA efforts at educating its employees about the time provisions were inadequate.

Defendants' motion to dismiss plaintiff Robinson's claims for lack of jurisdiction will be denied.

### III. MARY GRIMES/LINWOOD EWELL, JR./GEORGE HIBBLER

Mary Grimes, Linwood Ewell and George Hibbler, three black employees at MCSA, became employed at MCSA in early 1966 as Inventory Management Assistants (GS–7). Hibbler and Ewell were promoted to Inventory Management Specialists (GS–9) in 1968 and 1967, respectively; Grimes was never promoted. These three plaintiffs filed a joint informal race discrimination complaint on October 29, 1973 and a formal complaint on November 27, 1973. On December 13, 1973, Major General Jones, an Equal Employment Opportunity Counselor, rejected the formal complaint, finding that the allegations were untimely.[16] Complainants were informed of their appeal rights in the December 13 rejection letter.

Grimes, Ewell and Hibbler filed another complaint on January 4, 1974.[17] George Hibbler included a letter which stated: "this complaint is being filed to clarify the agency's misunderstanding of our earlier complaint, and that all of the violations which were alleged then are still continuing." On January 16, 1974, Major General Jones rejected this complaint which he labeled a "request to reactivate" the earlier complaint.

A lawyer at the Employment Discrimination Referral Project ("EDRP") wrote to Major General Jones on January 28, 1974 on behalf of plaintiffs and stated that the January 3 complaint "was not an attempt to reprocess the earlier complaint, since it covers matters not raised by the earlier filing." The attorney requested that the EEO officer regard the January 3 filing as a new complaint. On February 15, 1974, Major General Jones wrote to the EDRP attorney, informing him that MCSA stood by its earlier decision not to process what it considered a reactivated complaint. The letter stated that matters rejected in the December 13, 1973 letter could be appealed as set forth in the December 13 letter and that new incidents of discrimination could be filed within 30 days of their happening. There was additional correspondence between EDRP attorneys and Major General Jones at least into April, 1974.

Section 717(c) of Title VII, 42 U.S.C. § 2000e–16(c), confers jurisdiction on federal district courts where an aggrieved employee appeals within 30 days of receiving notice of final agency action or when, after 180 days from the filing of the initial charge, the agency has not taken final action. *See Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The complaint in this action was filed in federal court on April 24, 1974. We must determine whether we have jurisdiction pursuant to section 717(c).

Plaintiffs claim we have jurisdiction under one of several theories. First, they claim that no final action was taken on their complaint of January 4, 1974. Where there is no final agency action, section

---

**16.** The allegation of discrimination pertaining to the scheduled relocation of the MCSA to Georgia was rejected as a matter unacceptable for processing.

**17.** Charles Holmes, a black employee at MCSA, joined in this complaint.

717(c) permits suit by plaintiffs after 180 days from the filing of the initial charge. Plaintiffs filed their complaint in this court before 180 days had expired and seek to amend their complaint to comply with this section.

We disagree with plaintiffs' argument that MCSA's failure to *investigate* the new allegations in the January 4 complaint means that there has been no final agency action. Major General Jones' letter of January 16, 1974, *rejecting* the January 4 complaint, was unequivocal.[18] In so finding, we also reject plaintiffs' argument that if MCSA did refuse their complaint, it was in a letter dated April 8, 1974, which date is within 30 days of the filing of this lawsuit.

Major General Jones' January 16 letter rejecting plaintiffs' January 4 complaint failed to notify plaintiffs of their appeal rights as required by 5 C.F.R. §§ 713.234, .282. We are therefore bound by *Allen v. United States*, 542 F.2d 176 (3d Cir. 1976), to hold that there was no final agency action until plaintiffs were informed by MCSA that they had 30 days to file an appeal.[19] *See also Coles v. Penny*, 174 U.S.App.D.C. 277, 531 F.2d 609 (1976). *But see Eastland v. Tennessee Valley Authority*, 553 F.2d 364 (5th Cir. 1977). Major General Jones' letter of February 15, 1974 informed plaintiffs' attorney that plaintiffs could appeal the matters rejected in his December 13 letter and that such appeal rights were set forth in the December 13 letter. But as to the new incidents of discrimination in the January 4 complaint, the February 15 letter merely stated that charges of discrimination could be filed with the agency within 30 days of the incidents.

We believe that Major General Jones and the other EEO officers at MCSA handled the January 4 complaint badly. MCSA had the obligation to deal with all new incidents of discrimination alleged and could not reject the entire complaint merely because some old complaints also were realleged. *See* 5 C.F.R. § 713.215 which provides in relevant part: "The head of the agency . . . shall *reject those allegations* in a complaint . . . which set forth identical matters as contained in a previous complaint filed by the same complainant . . . ." (emphasis added). Because plaintiffs were never told of their right to appeal the new incidents alleged in the January 4 complaint which were rejected, there has been no final agency action as to these claims.

Plaintiffs will be permitted to amend their complaint to comply with the 180 day jurisdiction provision. We will then have jurisdiction over the complaint of Grimes, Ewell and Hibbler as to incidents of discrimination raised in the January 4 complaint which occurred within 30 days of January 4.[20] However, we believe that the only timely incident is Grimes' charge of harassment by her supervisor.

We reject the allegations of promotion discrimination as untimely. Mr. Hibbler gave some confused testimony about unknown whites being promoted over him between October, 1973 and January 4, 1974. But, there is no evidence that anyone was promoted within 30 days of January 4. We outlined the evidence we expected from plaintiffs in our opinion of October 20, 1976 and then gave them ample opportunity for discovery. We have no reason to believe that the government was unable or unwilling to provide plaintiffs and this court with information about hiring and promotion for the 30 day period.

The allegations in plaintiffs' administrative complaint about MCSA's transfer poli-

---

18. The fact that plaintiffs' *then* counsel (not present counsel) may have incorrectly advised plaintiffs as to the proper strategy in pursuing their complaint does not form a sufficient basis for excuse from the jurisdictional requirements of section 717(c).

19. *Allen* seems to provide an absolute rule, irrespective of actual knowledge.

20. Even if the allegations in the 1973 complaint were timely filed, MCSA rejection of the allegations as untimely was not appealed to this court within 30 days of their rejection. Since plaintiffs received notice of their appeal rights with the rejection of the complaint, we cannot exercise jurisdiction over these charges.

cy and the lack of an Annual Maintenance Review were barely understandable. There was no evidence presented at the hearing as to these matters. We have no reason to believe that plaintiffs were discriminated against within 30 days of January 4. Therefore, we hold that we do not have jurisdiction as to these matters.

Finally, we reject the Grimes, Ewell and Hibbler claims of continuing discrimination. All of their complaints are properly considered discrete incidents instead of continuing events.

The allegations of Grimes, Ewell and Hibbler will be dismissed except as to Grimes' charge of harassment by her supervisor.

### IV. CONCLUSION

Title VII jurisdictional issues are unnecessarily complex due to the lack of guidance from Congress and the courts. We have found jurisdiction as to most of the issues in this case, but we are not confident the Third Circuit will agree. There is no purpose in proceeding with costly and time-consuming litigation if the Third Circuit will eventually hold that there was no jurisdiction. Therefore, we will certify our decision under 28 U.S.C. § 1292(b) for interlocutory appeal.